438 So.2d 456 (1983)
Pauline HOLLAND, et al., Appellants,
v.
J.M. HATTAWAY, et al., Appellees.
No. 82-532.
District Court of Appeal of Florida, Fifth District.
September 22, 1983.
*458 Kenneth L. Mann and Raymer F. Maguire, III of Subin, Shams, Rosenbluth & Moran, P.A., Orlando, for appellants.
Phillip H. Logan of Shinholser, Logan, Moncrief & Barks, Sanford, for appellees J.M. Hattaway, J.R. Hattaway and R.R. Bruce.
Marvin E. Rooks of Robison, Rooks & Owen, Casselberry, for appellee Combank/Seminole County.
COWART, Judge.
This case involves a contest between two land titles and the effect of a curative act (§ 95.231(2), Fla. Stat. (1981)), the recording statute (§ 695.01, Fla. Stat. (1981)) and of the Marketable Record Title Act (MRTA) (§ 712.02, Fla. Stat. (1981)).
*459 Appellants filed a quiet title action seeking an adjudication that appellants owned Lot 2, Block B, and that appellees did not have an easement over the northerly 25 feet of that lot. Appellees defended on several theories discussed below. As appellees claim no rights by prescriptive use counsel stipulated that the entire controversy would be disposed of upon motion for a final summary judgment. The trial judge found that appellees had a "fee simple title" to an easement for road purposes over the northerly 25 feet of Lot 2 because (1) appellants' action was barred by the statute of limitations (§ 95.231(2), Fla. Stat. (1981)); (2) appellees had a marketable title to the easement under the Marketable Record Title Act (MRTA) (§ 712.02, Fla. Stat. (1981)); and (3) that appellants had constructive notice of appellees' claim and that such notice was contained in a deed in appellants' chain of title. This appeal resulted.
The parties claim under competing chains of title as follows:

*460
 Sovereignty
 APPELLANT'S CHAIN APPELLEE'S CHAIN
 Winter Park Ferneries
 -----------------------------------------------------------------
 6 | 2 Jul 1929 12 | 27 Mar 1930
 | rec 20 Feb 1930 |
 | |
 | |
 H. Casselberry Winter Park Gladiolus Gardens, Inc.
 7 | 2 Jul 1929 a/k/a Casselberry Gardens, Inc. 
 | Appellees' 13-24 | 7 May 1949
 | Origin of |
 | Title |
 | |
 Lake Concord Company, Inc. H. Besecker
 Appellants' 8 | Jul 1944 Appellees' 26 | 23 Jan 1951
 Root of Title | rec 8 Aug 1944 Root of Title | rec 24 Jan 1951
 | |
 Casselberry Utilities Company, Inc. R. Fox
 9 | 1 Jun 1961 28 | 6 Jul 1959
 | |
 | |
 | C. Hoover
 | 30 | 1 Nov 1960
 | |
 | |
 | K. Rissman
 | 35 | 9 Jul 1971
 | |
 | |
 | Sem-San Nursery & Landscaping Corp.
 | 39 | 28 Feb 1974
 | |
 | |
 | Seminole Employment and Economic
 | Development Corp., Inc. 
 | 40 | 3 Sep 1974
 | |
 | |
 M. Nasser Evergreen Enterprises, Inc.
 11 | 7 Oct 1980 14-49 | 10 Apr 1981
 | |
 | |
 Holland (Appellants) Hattaway (Appellees)

By the deed in entry 6 dated July 2, 1929, and recorded February 20, 1930, Winter Park Ferneries conveyed Lot 2, Block B, to H. Casselberry, appellants' remote grantor. That deed conveyed the entire title to Lot 2 undiminished, unlimited and unencumbered by any easement against it. The deed in entry 12 from Winter Park Ferneries to Winter Park Gladiolus Gardens, Inc., was not only subsequent to the deed in entry 6 by which Winter Park Ferneries parted with their title to Lot 2 but it expressly excepted Lot 2. Therefore the deed in entry 12 is actually not in the chain of title of either party. Appellees' record claim of an easement across Lot 2 commences with the deed at entry 13-24 dated May 7, 1949 from Casselberry Gardens, Inc. to Besecker dated May 7, 1949, conveying adjoining Lot 1, Block B, and including the language "together *461 with an easement for roadway purposes, to, over, and upon the northerly 25 feet of Lot 2 in said Block B." However, on the date of its deed Casselberry Gardens, Inc., was a stranger to the record title to Lot 2 which at that time was in Lake Concord Company, Inc., another of appellants' remote grantors. As to such easement interest the deed from Casselberry Gardens, Inc., constitutes a "wild deed" entirely outside of, and disconnected from, the chain of title to Lot 2. See Whaley v. Wotring, 225 So.2d 177 (Fla. 1st DCA 1969); City of Miami v. St. Joe Paper Co., 364 So.2d 439 (Fla. 1978). Therefore, if appellees have an easement in Lot 2 it must have some basis other than having been created by virtue of the mere execution of the deeds in entry 12 and 13-24. Before considering each of the three bases for the judgment below in favor of appellees we emphasize that this case does not involve the concept of prescription or the acquisition of title to an easement or other incorporeal hereditament by immemorial or long-continued enjoyment and use.[1]
The first of the three legs under the final judgment is the proposition that appellant's action for quiet title suit was barred by the "statute of limitations," section 95.231(2), Florida Statutes (1981), which reads in part as follows:
After 20 years from the recording of a deed ... purporting to convey real property, no person shall assert any claim to the property against the claimants under the deed ... or their successors in title.
The argument is that because appellees' claim of an easement over Lot 2 is derived through the deeds at 13-24 from Casselberry Gardens, Inc., to Besecker and the deed at 26 from Besecker to Fox and the deed at 28 from Fox to Hoover and the deed at 30 from Hoover to Rissman, and those four deeds purport to convey the easement interest now claimed by appellees, and those four deeds have been of record over 20 years, the statute prohibits appellants from asserting any claim to the property against claimants under those deeds (which includes the original grantees and their successors in title including the appellees). Section 95.231(2) must be read with section 95.231(1), of which it is a part, and when this is done it is more clear that this statute is not a traditional statute of limitation but is a curative act with a limitation provision.[2] The purpose of such a statute is to "cure" or clear an existing title to real estate or an interest in it, of formal irregularities, that is, of clouds, doubts and suspicions against the title resulting from technical defects in the form or execution of deeds and wills executed by "the person owning the property" by limiting the time within which such defects can be asserted to a stated time as measured from some event, such as their recording. The phrase quoted from the statute correctly indicates that the defects cured are those in conveyances and devises (muniments) in the chain of title emanating from "the person owning the property" (the true owner) and not merely a chain of conveyances emanating from a person not owning the property, i.e., the grantor in a wild deed. This alone eliminates the application of the statute to a spurious chain of title when in competition with a chain of title derived from "the person owning the property." Here appellants and appellants' predecessors in title have each been "the person owning the property" and the statute may remove defects in that chain of title but not in appellees' spurious chain. However, even applying the statute to appellees' chain of "title" the result would not be different here. Under a curative statute of this type, where there is competition between two chains of title and the first title is inherently superior to the second (because the first emanates from a superior source) but the first is subject to defects covered by the statute which defects inure to the second title giving it provisional superiority *462 over the first and the owner of the second has a cause of action to have the effect of the defects in the first made permanent by adjudication in an action to quiet title or to obtain a declaratory judgment but fails to assert such cause of action within the time limit set by the statute, then the provisional superiority of the second over the first may be destroyed by the curative effect of the statute eliminating the effect of the defects in the first. In this situation, except for defects in the form or execution of deeds and wills therein, the title with the defective muniments must be superior to the first from the beginning because the statute only cures and eliminates the detrimental effect that the defects cause but it does not otherwise strengthen one title or weaken the other. Such curative statutes may thus perfect an imperfect title but they were not intended to, and do not, create a right, title or interest in real property where it did not theretofore exist. The removal of defects enhances the quality of an existing title claimed through the defective deed or will but the mere elimination of the defect by the statute does not serve to create a title in the grantor of a defective deed where it did otherwise exist nor does it cause the deed to pass to the grantee a better title than the grantor had.[3] This blurry aspect of such a curative act is sometimes expressed and argued in terms of whether the deed sought to be cured by the statute was, or was not, a "void" deed, it being assumed that the act does not benefit a "void" deed. Accordingly, cases have held that this statute, and its predecessor, did not benefit a title based on a forged deed because it was void, Wright v. Blocker, 144 Fla. 428, 198 So. 88 (Fla. 1940), or a deed attempting to alienate homestead property contrary to constitutional and statutory limitations because such a deed was ineffectual, futile and void, Reed v. Fain, 145 So.2d 858 (Fla. 1962), or a deed from a county void for failure of the county to vacate a public road in the manner required by statute, Boys Work Inc. v. Gale, 321 So.2d 435 (Fla. 1st DCA 1975). For this reason the parties to this appeal argue as to whether or not a "wild deed" is a "void deed." Classifying a wild deed into the classic legal contract distinctions between "valid," "void" and "voidable" is not an indispensable or necessary step in considering the effect of this curative statute as applied to a "wild deed."[4] We hold that if a wild deed has defects in its form or execution, section 95.231(2), Florida Statutes (1981), would, after the applicable time limitation, bar one from asserting such defects as against the grantees of the wild deed or their successors in title but that, except insofar as the quality of the title of such grantees or their successors is improved by the removal of such defects, the statute does not improve their title and, if they had no title, the statute does not serve to create a title in them.[5]
*463 The trial court also ruled that appellees' title to their claimed easement was made marketable by the Marketable Record Title Act (MRTA).
Although MRTA has some attributes of other statutes that affect property interests (i.e., statutes of limitations, curative acts, and recording acts) it differs in material respects. Statutes of limitations generally bar causes of action after a stated time commencing when the particular cause of action accrued. Usual curative acts purport to immediately validate specific title defects. Curative acts with limitations provisions (such as section 95.231, previously considered) rectify specified title defects by barring attacks on the title based on such specified defects after a stated time running from some described event. MRTA proceeds by describing certain titles in land of record for a stated time, declares them to be of marketable quality and, with certain exceptions, undertakes to completely extinguish all other estates, interest, claims or charges as against such titles. The operative provisions of MRTA (sections 712.02 and 712.04, Florida Statutes (1981)) provide that when a person or his predecessors in title has been vested with any estate in land of record for 30 years or more, he shall have a marketable record title to such estate free and clear of all claims with the exceptions set forth in section 712.03. Therefore MRTA can even confer marketability to a chain of title arising out of a forged or wild deed. Marshall v. Hollywood, Inc., 236 So.2d 114 (Fla. 1970).
MRTA is applied[6] by first establishing a claimant's chain of title and determining its root of title. Section 712.01(2) defines "root of title" as the last or most recent "title transaction" purporting to create or transfer the estate claimed and recorded at least 30 years. Marketability is being determined in this case as of the filing of this quiet title action on August 12, 1981,[7] so appellees' root of title is the deed at entry 26[8] from Besecker to Fox, which was recorded January 24, 1951, and which purports to transfer the estate claimed by appellees, which is an easement for roadway purposes over the northerly 25 feet of Lot 2.[9] Initially MRTA appears to apply to *464 this root of title so as to create a marketable title to such easement in appellees and to extinguish all claims of appellants and others that do not qualify as exceptions under section 712.03. However, section 712.03(4) specifically provides as an exception:
(4) Estates, interests, claims, or charges arising out of a title transaction which has been recorded subsequent to the effective date of the root of title.
The words "arising out of" in the above exception are undefined in the statute, are not words of ordinary legal meaning in the context used, and cause a substantial construction problem. The definition of "root of title" in section 712.01(2), recognizes that "title transactions" all purport to either "create or transfer" an estate or interest in land. Therefore, conversely, estates, interests or claims in land are either created or transferred by a title transaction; yet section 712.03(4) uses neither of the terms "create or transfer" but, ambiguously, refers to estates, interests or claims "arising out of" a title transaction. This hedging by the draftsman of this statute leaves the question: do the words "arising out of" relate only to title transactions creating estates, only to title transactions transferring an estate or does it apply to both types of title transactions? The consequences of the answer are great and, in all fairness, this ambiguity should not be in this statute. If the draftsman meant to refer only to title transactions creating estates, interests, claims, or charges he should have said "created by" rather than "arising out of."
Existing interests in land are in law most commonly considered to be merely transferred by a subsequently executed deed, will or other title transaction and usually are not, in law, thought of as "arising out of" an instrument of conveyance such as a deed or will. A land title, under English common law, has often been likened to a bundle of sticks. The complete bundle is called an unencumbered fee simple absolute title and originally emerges from sovereignty by a grant. With exceptions based on the effect of statutes of limitations (adverse possession or prescription), tax titles, recording statutes, and MRTA, after title once issues from sovereignty, in strict real property legal contemplation, title is only transferred from grantor to grantee or devisor to devisee. New and different estates, rights, titles and interests in land are not created by each and every deed, will or other instrument of conveyance but are created only when one with a greater title interest breaks out and conveys a lesser estate or interest, as when a fee simple absolute titleholder creates by conveyance a lesser estate such as a life estate, a qualified or determinable fee, a remainder, an easement or creates a mortgage or other lien or equitable interest against his title by appropriate instrument. A titleholder can convey all of his interest and yet create lesser interests, such as when he, in one instrument, conveys a life estate to one grantee with the remainder interest to a second named grantee. Perhaps in this sense the legislature contemplated that the effect of every title transaction is to create or raise up a "new" interest in the land in the particular grantee or devisee of that particular title transaction because they did not have an interest in the land before the title transaction "created" an interest in them but experienced land title examiners do not think in these terms. When the legal problem is one of applying MRTA in the context of two competing chains of title, the effect of construing the words "arising out of" to include only title transactions that create a new lesser estate or interest or to construe those words to also include title transactions that transfer the whole of an existing interest or estate in land could be dramatic and controlling although the substance of *465 the difference between such title transactions is of no perceivable significance to claimants under the competing chain of title. We are here considering the effect of MRTA as possibly establishing the marketability, and, therefore, the superiority of appellees' claim of an easement under a chain of conveyances tracing back to appellees' root of title; however, during the 30 plus years from the recording of the Besecker deed to Fox on January 24, 1951, and the filing of this quiet title suit on August 12, 1981, there are two deeds in appellants' chain of title that constitute title transactions which were recorded subsequent to the effective date (January 24, 1951) of appellees' root of title. Those two deeds are the deed at entry 9 from Casselberry Utilities to M. Nasser and the deed in entry 11 from Nasser to appellants on October 7, 1980. If, within the meaning of this exception, appellants' estate or interest in Lot 2 can be said to "arise out of" either of those two title transactions, then the exception applies and MRTA does not destroy appellants' basically superior title as against the easement interest claimed by appellees through their spurious chain of title commencing with a wild deed.
We have thus far considered only the possible effect of MRTA on appellees' title as improving it against appellants' title to an easement. However, in this case MRTA also applies to appellants' fee title and we therefore have what has been called a "classic theoretical issue in marketable title legislation:" The Problem of the Two Chains.[10] Applying the definition in section 712.01(2), appellants' root of title would be the deed at entry 8 from Lake Concord to Casselberry Utilities which was recorded August 8, 1944, and which purports to transfer the interest claimed by appellants, which is the fee simple absolute title to Lot 2, unencumbered by the easement claimed by the appellees. Again it appears MRTA applies to this root of title so as to create a marketable title to Lot 2 in appellants and to extinguish all claims of appellees or others that do not qualify as exceptions under section 712.03. Here again though, as in the analysis of the affect of MRTA on appellees' root of title we must determine the meaning and effect of section 712.03(4).[11] Here again we *466 find that during the 30-plus years from the recording of the Lake Concord deed to Casselberry Utilities on August 8, 1944 (entry 8), and the filing of this quiet title suit (suit to try title) on August 12, 1981, there are deeds in appellees' chain of title that constitute title transactions which were recorded subsequent to the effective date (August 8, 1944) of appellants' root of title and those deeds consist of all eight deeds in appellees' chain of title commencing with the original wild deed in entry 13-24 from Casselberry Gardens, Inc., dated May 7, 1949, and including the final deed in entry 14-49 from Evergreen Enterprises, Inc., to appellees dated April 10, 1981. However, since appellees' claimed easement has its origin of record title in the deed in entry 13-24 from Casselberry Gardens, Inc. to Besecker dated May 7, 1949,[12] a date subsequent to August 8, 1944, the effective date of appellants' root of title, it is easy to state that appellees' claimed easement was created by that deed and, therefore, "arises out of" a title transaction which has been recorded subsequent to the effective date of appellants' root of title and, therefore, the exception in section 712.03(4) prevents MRTA from applying to statutorily render appellants' title marketable and prevents MRTA from destroying appellees' claim of an easement in Lot 2. Of course, this does not mean that appellants' title is not otherwise superior to appellees' claimed easement.
It has been said that the chief purpose of MRTA is to extinguish stale claims and ancient defects against the title to real property and accordingly, limit the period of title searches.[13] In view of this objective it would indeed be an anomaly to construe section 712.03(4), so that exception applies to exclude a title transaction recorded during an operative 30 year period which merely transfers an older genuine, main, fee simple absolute title (thereby allowing section 712.02 to make a newer inferior competing title marketable and superior to an older genuine title) but to construe that exception to include a title transaction recorded during an operative 30 year period which merely commences or "gives rise to" a wild or spurious chain of title of an easement that clouds the fee simple absolute title (thereby preventing section 712.02 from applying to improve the older genuine title by invalidating the newer spurious or wild title to a lesser interest). However, from the adoption of the 30-plus year operative period in the exception in section 712.03(4) as well as the limitation as to that period in section 712.02, it is clear that MRTA was not intended to and does not make marketable a title as against adverse record claims that first appear, or that are created, or "arise" during, or subsequent to the commencement of, the operative 30 year period. In other words as to claims (such as that of appellees) "arising" before the 30-plus year period applicable to a genuine title MRTA was not intended to benefit the genuine title (such as that owned by appellants) but that conclusion leaves open the converse question, which is: does MRTA apply to aid appellees' inferior title which, while it arises prior to appellants' root of title, also arises subsequent to appellants' origin of title and is yet itself over 30 years old of record? This question occurs only because section 712.03(4) excepts not just claims arising during the 30 year period immediately prior to the time when marketability is being determined (here August 12, 1951  August 12, 1981) but also excepts claims arising during a period going back to the effective date of the root of the title being considered.
Here, merely because there was no title transactions in appellants' chain of title during the 7 year period between entry 8 in 1944 and August 12, 1951 (30 years immediately prior to this quiet title action), appellants' *467 root of title (entry 8) goes back not just 30 years but 37 years to July, 1944. On the other hand, while appellees' root of title (entry 26  January 24, 1951) is old enough (30 plus years old) for section 712.02 to apply to make it marketable as against appellants (if some exception in 712.03 does not apply) appellees' origin of title (entry 13-24  May 7, 1949) is still young enough to have occurred after appellants' effective root of title (entry 8  August 8, 1944) thus causing the exception in 712.03(4) to apply to appellees' claim and preventing 712.02 from applying to appellants' title to extinguish appellees' claim. Peculiarly this is true even though appellees' origin of title (entry 13-24  May 7, 1949) is, of course, older than appellees' root of title (entry 26  January 24, 1951) and both are far younger than, and inferior to, appellants' origin of title which was from sovereignty.
Under usual English-American title concepts with exceptions not here material[14] a title claimed by mense conveyances from sovereignty is superior to one that is not. Must MRTA be construed to not only fail to support that basic premise but to defeat it because the origin of the superior title is older than the root of a spurious title (causing section 712.02, when applied to both, to potentially cut off the superior in favor of the spurious) and the origin of the spurious title is younger than the root of the superior title (which under the exception in 712.03(4) prevents 712.02 from cutting off the spurious title in favor of the superior title)?
In contemplating the answer to this question one should consider two matters, viz: (1) the origin of a true superior title, being sovereignty, will always be before the origin of any spurious title relating to the same land and (2) section 712.01(2) defines root of title as the last title transaction recorded at least 30 years, and section 712.03(4) uses that last title transaction at least 30 years of record (and not the origin of title) as pivotal in determining whether a second competing title arises subsequent to the root of a first or true title (and, hence, is preserved as an exception under section 712.03(4)) or arises prior to the root of a first or true title (and, hence, is extinguished because it is not an exception under section 712.03(4)). This means that when each of two competing titles goes back at least 30 years of record, to initially apply 712.02 and 712.04 to make both titles marketable and to then apply 712.03(4) to exclude MRTA's beneficial effect as to one title but to give it to the other will almost always cause the contest to turn not on which is the superior title traced from sovereignty but on the fortuitous circumstance of which chain of title had a title transaction closest to, but before, the start of the operative 30 year period. This is because the title with the title transaction last next before the 30 year period will always be protected from extinguishment under 712.03(4) as it will always be subsequent to the root of the second title while the second title may, as here, arise prior to the root of title with the last next pre-30 year root and therefore may be within the exception in 712.03(4) and may be subject to extinguishment under 712.02 and 712.04. This situation is illustrated in this case by considering the consequences if there had been any title transaction in appellants' chain of title recorded after May 7, 1949 (the date of the title transaction at entry 13-24 from which appellees' claim "arose" as per 712.03(4)) and August 12, 1951 (the commencement of the 30 year period immediately before the filing of this quiet title suit which is "the time when marketability is being determined" (712.01(2)). Any title transaction in appellants' title during this two-plus year period would then have been appellants' root of title and appellees' claim (arising in entry 13-24  May 7, 1949) would then not have been subsequent to appellants' root of title and would not fall in the exception in 712.03(4) and would have been extinguished by the effect of MRTA on appellants' title. Considering that the legislative purpose of MRTA is to simplify and facilitate land title *468 transactions and to permit persons to rely on the record title (section 712.10), it is difficult to believe the legislature intended MRTA to apply to two active competing titles and to cause one of two titles to gain superiority over the other depending solely on the random chance as to which title contains the latest title transaction over 30 years old rather than on the basis that one title traces true and sure from sovereignty while the other title was conceived only in a scrivener's imagination and reached 30 years of age by hiding outside of the record chain of true title and by not being sooner asserted against the true title.
In overview MRTA seems to contemplate but one title and one root of title and the effect of the Act on that title. It is not readily apparent that MRTA was intended to resolve a contest between competing titles,[15] where, as here, each of the two titles have an origin in a title transaction recorded over 30 years thus each title has a root of title and MRTA would appear to apply and make each title marketable as against the other unless one title involves some exception under section 712.03 which latter event cannot be depended upon to occur in every such case and when it does occur it may not dependably except the better or superior of the two titles.
The purpose of the exception in section 712.03(4) appears to be to prevent MRTA from destroying the rights of those who have or claim estates and interests in the land under an instrument or court proceeding recorded during the 30 years or more MRTA requires to make a title marketable, yet to permit MRTA to destroy the same rights if they are dependent on title transactions occurring prior to the last title transaction recorded over 30 years, that is, prior to the root of title. In considering the overall intent of MRTA we note sections 712.05 and 712.06 which provide a method of filing, during the operative 30 year period, a recorded notice of a claim of interest in land which prevents the noticed and claimed interest from being extinguished by the act. No such notice was filed as to claims under either of the two titles involved in this case. We also note the exception in section 712.03(6) as to persons in whose name the land is assessed on the county tax rolls.[16] We further note the exceptions in 712.03(3) in favor of the rights of persons in actual possession. Neither side in this controversy has claimed either of these latter two exceptions. From these provisions and 712.04 we conclude that it is the intent of MRTA to free one title from all competing and adverse claims and interests which depend upon acts or title transactions occurring prior to the effective date of its root of title (those 30 or more years old) but not to defeat a current, valid, superior title notice as to which is being actively given by actual possession by an owner, by assessment of the owner on the county tax rolls or by a notice filed under 712.06 (excepted by 712.03(2)) or under 712.03(4) by title transactions recorded subsequent to the effective date of its root of title and during the 30 year operative period relating to a competing interest. This concept of notice is vital to the constitutional validity of statutes that destroy vested property rights. In the context of two competing chains of title each old enough of record to have a root of title as defined in section 712.01(2), it appears to us entirely illogical and wrong to construe the words "arising out of" to make a controlling distinction between a title transaction recorded during the operative 30 years that transfers all of the estate or interest owned by the grantor without division into lesser estates and one creating one or more lesser estates, interests, claims or charges than the grantor possessed. Both of such conveyances serve equally well to give notice of an actively asserted interest in the land in question and *469 both serve the same purpose as a recorded notice filed under section 712.05 and of assessment on the county tax rolls under 712.03(6). Therefore, solely in the context of two competing chains of title each over 30 years of age of record we construe the words "arising out of" in section 712.03(4) to contemplate not only the unusual occurrence of the owner of a competing and greater title creating a lesser interest during the operative 30 years but also the more common occurrence of a transfer of the whole of an existing interest during the operative 30 year period by a recorded instrument or court proceeding which constitutes a title transaction. Under this construction of the exception in section 712.03(4) a title transaction in a competing chain of title which itself has a root of title as defined in section 712.01(2), which title transaction describes the land sufficiently to identify its location and boundaries and is recorded during the operative 30 year period applicable to the competing chain of title, constitutes adequate notice of the existence and active assertion of title of record and has the same effect as either a notice filed under section 712.06 (an exception under 712.03(2)) or notice from a county tax roll assessment (an exception under 712.03(6)) or notice from possession (an exception under 712.03(3)) in preventing an extinguishment of an interest in the land by sections 712.02 and 712.04. We are encouraged in this construction by the fact that an opposite conclusion would place on all bona fide owners of the true title to estates in land in Florida who are not in actual possession and whose name is not on the county tax rolls because of multiple ownership or other legitimate reason, the burden[17] of filing a notice under section 712.05 every 30 years or to risk loss as against competing recorded but entirely unknown and spurious claims, a result that should not, and need not, be made necessary by MRTA.
The last reason given for the judgment in favor of appellees below was that appellants had constructive notice of appellees' claim because such notice was contained in a deed in appellants' chain of title. This is a reference to the fact that one deed in appellants' chain of title, being the deed in entry 9 from Casselberry Utilities to M. Nasser, reserved "unto the grantors" an easement described by metes and bounds over the north 26.74 feet of Lot 2 "for so long as the ferneries operated by Casselberry Gardens, Inc., a Florida corporation, continue in existence at a location Westerly across U S 17-92 from the above described property." While this reserved easement is over approximately the same land as the easement claimed by appellees it is not the same easement claimed by appellees. It differs in quantity, quality, time of creation and ownership. The right of way easement claimed by appellees was clearly intended to be in rem and appurtenant to, and for the benefit of, Lot 1 which is one of its termini. The deed at entry 9 reserved an easement only to the grantor, Casselberry Utilities, and created an easement in gross the continuing existence of which depended upon a contingency which appellees admit no longer exists. Nevertheless appellees insist that the reservation of this easement in a deed in appellants' chain of title put appellants on "constructive notice" of appellees claim to an easement notwithstanding that appellees' claimed easement was contained only in deeds not in appellants' chain of title. This argument is fallacious, immaterial, and irrelevant to any legal issue dispositive of this case. Constructive notice is a concept that applies only when each of two antagonistic title claims are based on two conveyances from the same source. In that situation, under recording statutes, the second or subsequent conveyance is considered superior to the first conveyance unless the first has been recorded in the public records where it gives constructive notice to a subsequent purchaser for value thereby preventing the latter *470 from being a purchaser without notice of the first conveyance. The principle of constructive notice would be relevant to a holding that appellees' claim of an easement was superior to appellants' title only if appellees' claimed easement traced to, and was contained in, the conveyance in entry 12 from Winter Park Ferneries, which it does not, and, further, if the deed in entry 12 had been executed and recorded before the conveyance in entry 6 to appellants' predecessor in title, which it was not; then, and only then, might appellees' claim be superior to appellants' claim because in that event appellees' claim would be superior and appellants and their predecessors in title would have had constructive notice of it. However, these are not the facts in this case. Florida's recording statute, section 695.01(1), Florida Statutes (1981), basically provides that, as between two successive purchasers, the first has priority if the second had notice of the first at the time the subsequent interest was acquired.[18] Notice can come from (1) actual possession and occupancy of the property, (2) actual notice of the interest of the first purchaser or notice of sufficient facts to put a reasonable person on such inquiry as would have lead to actual notice[19] or (3) constructive notice of matters recorded in the public records and in the subsequent purchaser's chain of title.[20] However, recording statutes do not support or validate a wild deed or any conveyance of an interest that the grantor does not have,[21] except only to the extent a subsequent purchaser for value without notice may acquire rights under the recording statute as against a prior purchaser from the same source or such prior purchaser's successors. In this case appellees are not subsequent purchasers for value without notice of the interests of appellants or of appellants' predecessors in title and, hence, the recording statute and its concept of constructive notice avails appellees nothing. Appellants' title to Lot 2 is superior to appellees' right to an easement over it not because appellants had no notice, actual or constructive, of appellees claimed easement, but because appellants' title to Lot 2 is derived from and through a chain of title from sovereignty while appellees' claim originates with the wild deed at entry 13-24 from Winter Park Gladiolus Gardens, Inc., which company had no title. In fact, the recording statute applies here only in favor of appellants since even if appellees could claim title back through the deed in entry 12 (and, they, to the same source as appellants) that deed was executed March 27, 1930, after the deed in entry 6 was recorded on February 20, 1930, and, therefore, claimants, such as appellees, under the deed in entry 12 would have constructive notice of the recorded deed at entry 6 and would always be inferior to parties, such as appellants, claiming through the deed at entry 6.
The final summary judgment is reversed and the cause remanded with instructions to enter a final summary judgment in favor of appellants in usual form in quiet title actions, finding that appellees' claimed easement is invalid and constitutes but a cloud against appellants' title and removing that cloud and adjudicating appellants' title good as to such claimed easement and enjoining *471 appellees from further assertion of such easement.
REVERSED AND REMANDED.
SHARP, J., concurs specially with opinion.
ORFINGER, C.J., dissents with opinion.
SHARP, Judge, concurring specially.
I concur with Judge Cowart's conclusions in this case: (1) section 95.231(2), Florida Statutes (1981), is not applicable to make appellees' title superior to appellants'; (2) the easement created by the deed in entry number 9 of appellants' chain of title is not the same as appellees' easement and, therefore, it does not constitute notice of appellees' claim; and (3) section 712.03(4), Florida Statutes (1981), prevents the appellees' root of title, recorded on January 24, 1951, from ripening into a superior title under the Marketable Record Title Act (MRTA).
Within the necessary 30 year period[1] after 1951, when appellees' easement was recorded, the fee absolute, free from any reference to an easement, was transferred in appellants' chain (entry number 9, June 1, 1961). Although appellants' predecessor in title did not transfer the appellees' easement, the transfer of the servient tenement without mention of the easement constituted an estate "arising out of a title transaction" which was recorded subsequent to appellees' root of title, because it was contrary and in derogation of appellees' easement. Indeed, had the easement been a valid one, the conveyance of the fee without excepting the easement would have breached the grantor's warranty of title. Therefore, the transfer of the fee under appellants' chain at entry number 9 operated to prevent appellees' root of title from becoming superior to appellants' fee under MRTA. § 712.03(4), Fla. Stat. (1981).
That, I think, ends the matter. Appellants need not, in turn, prevail under MRTA. If there was a perfected root of title in this chain, they could have prevailed on that basis. But as Judge Cowart concludes, because of the intervening transfers of the easement in appellees' chain, the appellants also do not have a perfected root of title under MRTA. However, appellants do have a superior chain of title traced back to "the sovereign," and appellees only have a wild or spurious chain. Under these circumstances, the law prior to MRTA applies. The superior title (appellants') prevails.
ORFINGER, Chief Judge, dissenting:
It seems clear that appellees have only a wild deed on which to base their claim of easement, but it has been held that the Marketable Record Title Act (MRTA) confers marketability upon a chain of title based on a wild or forged deed, when such deed has been on record for not less than thirty years. Marshall v. Hollywood, Inc., 236 So.2d 114 (Fla. 1970).
Appellants have a good record chain of title to the underlying fee and MRTA is not applicable or required to make their title good. The question, however, is not whether appellants have good record title, but whether this title is burdened (has become servient) by a permanent easement for road purposes over the north 25 feet of Lot 2, Block B, in favor of Lot 1, as the dominant estate, owned by appellees. If we conclude, as apparently we all do, that the wild deed to appellees constitutes a sufficient root of title to support the easement under MRTA, the remaining question is whether the application of MRTA is prevented by section 712.03(4). The deeds in appellant's chain of title recorded after the root of title create no "estates, interests, claims or charges." These deeds merely convey the fee which appellants already had. Neither does any greater estate, interest, claim or charge arise out of those deeds, because each such conveyance is subject to the claim of the easement even without specific reference to it. Similarly, this easement, as an incorporeal hereditament, passes with each conveyance of the dominant estate because it runs with the land, even in the absence of specific reference to the easements in conveyances of the dominant estate. Therefore, in *472 the absence of any disclaimer, each deed in appellant's chain of title subsequent to the deed purporting to create the easement must be deemed to be subject to the already recorded grant of easement and cannot be considered as a "title transaction" as defined in section 712.01(3) as the deeds pertain to the easement, because these instruments do not purport to affect the title to the easement in any way whatever. The conveyance of the fee is not inconsistent with the existence of the easement, but is subject to it.
The purpose of MRTA is to simplify and facilitate land title transactions by allowing persons to rely on a record title described in section 712.02, subject only to the exceptions in section 712.03, and shall be liberally construed to effectuate its purpose. Section 712.10. See also ITT Rayonier, Inc. v. Wadsworth, 346 So.2d 1004 (Fla. 1977); City of Miami v. St. Joe Paper Co., 364 So.2d 439 (Fla. 1978). I would affirm.
NOTES
[1] See Gay Bros. Constr. Co. v. Florida Power & Light Co., 427 So.2d 318 (Fla. 5th DCA 1983); Crigger v. Florida Power Corp., 436 So.2d 937 (Fla. 5th DCA 1983).
[2] See generally Day, Curative Acts and Limitations Acts Designed to Remedy Defects in Florida Land Titles, 9 U.Fla.L.Rev. 145 (1956).
[3] The effect of a curative act on an inferior title is like cleaning up an inferior animal to compete with a superior one: when cured of its fleas, ticks and mange it certainly is better than it was before but it will still lose in competition with a basically superior animal.
[4] If "void" means only that an instrument is ineffectual to accomplish its apparent intended purpose and it is assumed that the grantor in a warranty deed intends to convey good title to the real property interest described therein, then a "wild deed" is a void deed because a "wild deed" by definition is a deed from a grantor who had no apparent record title and therefore cannot convey one. However, if "void" refers only to that which has absolutely no legal effect and which can never have any legal effect, then a wild deed is probably not a void deed because even an apparent "wild deed" may have certain legal consequences, such as, (1) being the basis for a cause of action for contractual breach of warranty; (2) as being sufficient to pass an after-acquired title; (3) as color of title under some statutes of limitation (see § 95.16, Fla. Stat.); (4) as will be discussed below, as being a "title transaction" and a root of title under section 712.01(2), Fla. Stat.; (5) as being a conveyance to a good faith purchaser for value as may defeat a superior but unrecorded title under recording acts, and, perhaps as having other legal effect.
[5] As a matter of interest we note that if section 95.231(2) applied to the four deeds in appellees' title (entries 13-14, 26, 28 and 30) that were recorded for over 20 years prior to this lawsuit, so as to bar appellants from asserting any claim to the exclusive ownership of the northerly 25 feet of Lot 2 against appellees, as successors in title under those deeds; then the same statute would likewise apply to the four deeds in appellants' title (entries 6, 7, 8 and 9) that were recorded for over 20 years prior to this lawsuit so as to also bar appellees from asserting any claim to the northerly 25 foot of Lot 2 against appellants, as successors in title under those deeds. For this reason alone, except for removing stated defects in instruments in both of two competing chains of title, this statute is not helpful in resolving basic conflicts in two competing chains of title especially when, as here, the statute would apply to both titles.
[6] See generally Cochran, The Root of Title Concept or How to Use the Florida Marketable Record Title Act, 52 Fla.Bar J. 287 (1978); Moorhouse, The Marketable Record Title Act and The Recording Act: Is Harmonic Coexistence Possible?, 29 U.Fla.L.Rev. 916, 932-44 (1977). For a good outline of the title search required in applying MRTA, see Wilson v. Kelley, 226 So.2d 123, 127 (Fla. 2d DCA 1969).
[7] However, actually MRTA would appear to apply to titles to affect and effect marketability continuously from the effective date of the act. See State Dep't. of Natural Resources v. Contemporary Land Sales, Inc., 400 So.2d 488 (Fla. 5th DCA 1981).
[8] In a request for admissions appellants requested appellees to admit that appellees' "root of title" was the deed at entry 13-24 (Casselberry to Besecker). Appellees admitted that deed was "a" root of their title but claimed there may be others. Both parties were apparently treating the term "root of title" as descriptive rather than as defined in section 712.01(2). Under that section a chain of title has but one "root of title" and it is not necessarily the origin of the chain of title. Both parties were in error in this instance because the deed at entry 26, not the deed in entry 13-24, "is the last title transaction [in appellees' chain of title] to have been recorded at least 30 years prior to the time when marketability is being determined." § 712.01(2), Fla. Stat. (1981).
[9] We have carefully considered whether an easement for access appurtenant to a parcel of land is an "estate in land" as that term is used in section 712.02 and have reluctantly concluded that it is because the term "estate" includes all interests in land inheritable at common law and an easement appurtenant (perhaps as distinguishable from an easement in gross) was considered an incorporeal hereditament and hence an estate in land and inheritable. Considering the purpose of MRTA and the fact that normally the title to land is now held in one estate and interests such as easements constitute claims and encumbrances against that one title it is unfortunate that section 712.02 is so broad as to include and perfect not only the one fee simple absolute title but also includes and perfects easements and other lesser title interests which as a practical matter constitute but claims and encumbrances that cloud and detract from the one fee simple absolute title the perfection of which is, or should be, the very purpose of a marketable record title act.
[10] Boyer & Shapo, Florida's Marketable Title Act: Prospects and Problems, 18 U.Miami L.Rev. 103, 117 (1963).
[11] Section 712.03(6) excepts from MRTA

(6) rights of any person in whose name the land is assessed on the county tax rolls for such period of time as the land is so assessed and which rights are preserved for a period of three years after the land is last assessed in such person's name.
Normally this exception should eliminate the problem of MRTA applying to both of two competing chains of title each recorded at least 30 years because, in the absence of a total omission or a double assessment for 30 years, the county tax roll would assess the land only to persons in the one true chain of title to the fee and their rights would be excepted by section 712.03(6) thereby preventing MRTA from applying to a spurious chain of title. This exception (6) would appear to apply to each person in a genuine chain of title to the fee during the time that person is shown as the owner of the land on the county tax roll and each such person's rights pass to that person's grantees so that the effect would be cumulative, the operative 30 years would never accrue, and MRTA would never apply to benefit a spurious chain of title as against persons claiming under the true chain of title to the fee and to whom the land is being continuously assessed on the county tax rolls. However in this particular case when appellees pled section 712.02 of MRTA as perfecting their title to the claimed easement against appellants, appellants did not plead the exception in 712.03(6) by a reply to the affirmative defense and therefore the effect of 712.03(6) in this case has not been properly presented nor preserved. In the normal course of things it would appear to be appellants and appellants' predecessors in title to whom this land would be assessed on the county tax rolls thereby preventing MRTA from extinguishing or affecting the rights of parties under that chain of title. The only reference to this point before the trial judge is contained in appellees' memorandum of law on motion for summary judgment filed December 2, 1981, page 12, which memorandum refers to 712.03(6) and states that it is not applicable "since plaintiff and defendant are each assessed on their separate estates for tax purposes." This assertion is neither confirmed nor disproved nor put in issue but is contrary to what would be expected in that Lot 2 would normally have been assessed to appellants and their predecessors in title while appellees and their predecessors would have been assessed as to Lot 1, and their claimed easement would normally not be assessed separately to appellees or their successors in title on the county tax rolls. It is unfortunate that this exception was not properly pleaded and presented below because it would be expected to completely eliminate the problem in this case.
[12] Notice that this title transaction predates appellees' root of title which, because of the definition in section 712.01(2) is entry 26.
[13] See Florida Bar Continuing Legal Education, Florida Real Property Practice I § 6.2 (1965).
[14] Exceptions include the effect of defects in the execution of instruments in the chain of title, recording statutes, adverse possession and tax deeds.
[15] Two commentators have stated that MRTA legislation is generally not meant to apply to competing claims. C. Smith and R. Boyer, Survey of the Law of Property, 262-63 (2d ed. 1971). However, nothing in the present Florida act makes that clear. MRTA was applied in Whaley v. Wotring, 225 So.2d 177 (Fla. 1st DCA 1969), to extinguish the claim of a competing chain of title.
[16] See supra note 11.
[17] While this burden is less onerous than requiring a law action to be filed it is still unknown and overlooked by both lawyers and the public at large and would be burdensome and a nuisance and should be unnecessary.
[18] See Cain & Bultman, Inc. v. Miss Sam, Inc., 409 So.2d 114 (Fla. 5th DCA 1982).
[19] See, e.g., Ruotal Corp., N.W., Inc. v. Ottati, 391 So.2d 308 (Fla. 4th DCA 1980) (where agent of subsequent purchaser had actual knowledge of unrecorded written lease of first purchaser, subsequent purchaser was not "without notice"). Cf. Florida Power & Light Co. v. Rader, 306 So.2d 565 (Fla. 4th DCA 1975) (where power line easement was visible and subsequent purchaser saw them, subsequent purchaser took "with notice" even though written easement was unrecorded).
[20] See, e.g., Cain & Bultman, Inc. v. Miss Sam, Inc., supra note 18; Feemster v. Schurkman, 291 So.2d 622 (Fla. 3d DCA 1974); Atod, Inc. v. Coleman, 214 So.2d 769 (Fla. 3d DCA 1968).
[21] See, e.g., Cahill v. Chesley, 189 So.2d 818, 822 (Fla. 2d DCA 1966) (attempted fee simple absolute transfer from one who only owns a life estate cannot be made good by section 695.01).
[1] § 712.02, Fla. Stat. (1981).