NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING
MOTION AND, IF FILED, DETERMINED

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

SECOND DISTRICT

LEIGHTON N. HARDEY and AILEEN M. HARDEY,

      Appellants/Cross-Appellees,

v.

ROBERT SHELL and KAY SHELL,

      Appellees/Cross-Appellants.

Case No. 2D12-3925

Opinion filed August 13, 2014.

Appeal from the Circuit Court for Lee County; Michael T. McHugh, Judge.

Eilsa S. Worthington of Elisa S. Worthington, P.A., Pineland, for Appellants/Cross-Appellees.

John R. Hamilton of Foley & Lardner LLP, Orlando, for Appellees/Cross-Appellants.

MORRIS, Judge.

      Leighton and Aileen Hardey appeal a final judgment entered against them on their complaint filed against their neighbors, Robert and Kay Shell. On appeal, the Hardeys argue that the trial court erred in entering summary judgment on their count for declaratory relief on the basis that it is barred by the statutes of limitations in sections

95.11 and 95.231, Florida Statutes (2009).  We agree and reverse the summary judgment on the Hardeys' count for declaratory relief.  However, we find no merit to the other issues raised by the Hardeys on appeal or the Shells on cross-appeal.

I.        Factual Background

The Hardeys and the Shells own neighboring properties fronting on the east side of Hickory Boulevard in Bonita Beach, Florida.  The Shells' lot is situated between Hickory Boulevard and the side of a natural cove of Estero Bay.  The Shells' lot is so narrow that the back of their home is built on pilings over the water.  The Hardeys' lot is south of the Shells' lot; the Hardeys' lot is wider at 100 feet by 100 feet and extends farther to the east than the Shells' lot.  The cove of Estero Bay runs along the eastern side of the Shells' lot and ends at the northern line of the Hardeys' lot; the cove frontage is the only waterfront on either lot.  Both properties have seawalls.  The Hardeys bought their property in 1992.  The Shells acquired their property in 2009 from Mr. Shell's LLC, which had purchased the property in 2005.

In 2010, Mr. Shell laid claim to the Hardeys' waterfront, asserting that the Hardeys' entire waterfront and dock were included in the legal description of the Shells' lot.  Shortly thereafter, Mr. Shell erected a fence across the Hardeys' pool deck and along the entire length of the Hardeys' waterfront, about three feet back from the Hardeys' seawall.  The fence was erected on cemented metal posts, some of which were drilled into the Hardeys' pool deck.

The current dispute between the Hardeys and the Shells must be understood in the context of the relevant history of the two properties.  First, the legal description of the Shells' property changed sometime between 1955 and 1971.  In 1955,

the Langleys conveyed what is now the Shells' property to Marian Buchanan, but the legal description is defective and does not close; the 1955 deed describes the point of beginning as the water's edge in the northeast corner of the lot, yet the fourth and final call ends at Hickory Boulevard in the northwest corner and does not close at the water's edge in the northeast corner.  Perhaps to remedy this, the legal description to the property was changed when Marian Buchanan sold the property to the Seils in 1971, but this new legal description still does not appear to close.  The 1971 deed describes the point of beginning as the northeast side of Hickory Boulevard, which is the northwest corner of the lot.  The northern line of the lot then runs northeasterly to the cove; the eastern line of the lot then runs southeasterly along the water; the southern line of the lot then runs southwesterly 100 feet to Hickory Boulevard; the western line of the lot runs northwesterly 100 feet to the point of beginning.  The problem with this description, as aptly explained by the Hardeys, is that "the fourth call seems to overshoot the northeast side of Hickory Boulevard."  The 1955 deed describes the southern line of the lot running 40 feet to Hickory Boulevard, while the 1971 deed describes the southern line of the lot running 100 feet to Hickory Boulevard.  The legal description in the 1971 deed is the legal description by which the Shells took title.

Second, in 1979, the Franks owned what is now the Hardeys' property and replaced their old wooden seawall with a new concrete one.  The new seawall was constructed one and one-half feet out into the water in front of the old one and the space between the two seawalls was filled with dirt.  The new seawall created a problem because the waters of the cove no longer intersected with the common line between the two affected properties.  The cove was now separated from the common

lot line by the new seawall and the small strip of land between the new seawall and the old sea wall.

The altered description of the property now owned by the Shells and the construction of the improvements on the lot now owned by the Hardeys have caused much confusion among the property owners.

Third, shortly after the Hardeys acquired their property, Marjorie McLymond, who had purchased from the Seils what is now the Shells' property, told Mr. Hardey that her legal description showed that her southern lot line extended 100 feet and that she therefore owned the Hardeys' entire waterfront. Mr. Hardey then learned that the Lee County Property Appraiser had depicted on the tax map the Hardeys' waterfront strip as being part of Mrs. McLymond's lot. Thereafter, in 1997, Mr. Hardey sued his sellers, their realtor, and Mrs. McLymond in an effort to resolve the issue. The Lee County Property Appraiser corrected the tax map to reflect that the disputed waterfront strip was part of the Hardeys' lot. Mrs. McLymond did not continue to assert a right to the waterfront strip, and the Hardeys believed that the dispute had been resolved. The case was ultimately dismissed for lack of prosecution. When the Shells bought their property from Mrs. McLymond in 2005, she told them that the dispute had been resolved.

After the Shells erected the fence on the Hardeys' pool deck and asserted their right to the waterfront property at issue in 2010, the Hardeys filed a complaint against the Shells alleging five counts. In November 2010, the parties agreed to an order granting the Shells' motion to dismiss counts three, four, and five without prejudice to the Hardeys' right to amend. In June 2011, the Shells filed a motion for summary

judgment, claiming that the remaining counts for declaratory relief and for reformation of the Shells' deed are barred by the statute of limitations in sections 95.11 and 95.231. In August 2011, the Hardeys filed a motion to amend their complaint. On January 17, 2012, the trial court held a hearing on the Shells' motion for summary judgment, and that same day, the Hardeys voluntarily dismissed their count for reformation.

In a written order filed on February 9, 2012, the trial court granted the Shells' motion for summary judgment:

> The Court finds that the [Hardeys] are precluded from proceeding pursuant to Florida Statutes 95.231 and 95.11. The Court finds that the same issue raised in this proceeding was litigated in [the earlier case against Mrs. McLymond]. Based on a review of the pleadings in that case[,] it is clear that the Statute of Limitations would begin to run pursuant to Florida Statute 95.11, at the latest, as of the filing of that previous matter. Based on the foregoing, the Court finds that this case violates the four[-]year statute of limitation outlined in Florida Statute 95.11.
> Likewise, it appears that the property description being disputed by the [Hardeys] has been in place since at least 1971. Pursuant to the twenty[-]year restriction under Florida Statute 95.231[,] this cause of action is also barred.

In March 2012, the Shells filed a motion for attorneys' fees on the basis of section 57.105(1), Florida Statutes (2009). In April 2012, the Hardeys filed an amended motion to amend their complaint. After a hearing held in June 2012, the trial court entered an order denying the motions and ultimately entered a final judgment.

II.      Analysis

"Summary judgment is proper only if (1) no genuine issue of material fact exists, viewing every possible inference in favor of the party against whom summary judgment has been entered and (2) the moving party is entitled to a judgment as a matter of law." Armiger v. Associated Outdoor Clubs, Inc., 48 So. 3d 864, 869 (Fla. 2d

DCA 2012) (citations omitted) (citing Volusia Cnty. v. Aberdeen at Ormond Beach, L.P., 760 So. 2d 126, 130 (Fla. 2000), and Huntington Nat'l Bank v. Merrill Lynch Credit Corp., 779 So. 2d 396, 398 (Fla. 2d DCA 2000)).

We first address the trial court's conclusion that the Hardeys' claim is barred by the four-year statute of limitations in section 95.11(3). The Hardeys were involved in a dispute with Mrs. McLymond in 1997 after Mrs. McLymond asserted a claim to the waterfront strip, and the Hardeys filed an action against her for declaratory relief. But the tax map was corrected, the dispute was resolved, and Mrs. McLymond essentially withdrew her claim to the waterfront strip. There was no longer a "present controversy" or "an actual, present, adverse and antagonistic interest in the subject matter" required for an action for declaratory judgment against Mrs. McLymond. See Meadows Cmty. Ass'n v. Russell-Tutty, 928 So. 2d 1276, 1279 (Fla. 2d DCA 2006) (quoting May v. Holley, 59 So. 2d 636, 639 (Fla. 1952)). Until the Shells laid claim to the Hardeys' waterfront strip in 2010, there was no cause of action and no basis upon which to seek a declaration as to who owned the waterfront strip.

In January 2010, the Shells first asserted their claim to the waterfront strip by expressing their intention to remove the pilings of the Hardeys' dock. In May 2010, the Shells erected a fence across the Hardeys' pool deck. These events created a present controversy between the Shells and the Hardeys and an actual, present, adverse and antagonistic interest in the waterfront strip. At that time, the necessary elements for a cause of action for a declaratory judgment had occurred. See id. The Hardeys' complaint was filed in June 2010, well within the four-year statute of limitation

applicable to the present controversy. Based on these undisputed facts, the trial court erred in granting summary judgment on the basis of section 95.11.

Moreover, the twenty-year limitation in section 95.231 does not bar the Hardeys' count for declaratory relief. Section 95.231(2) provides: "After 20 years from the recording of a deed or the probate of a will purporting to convey real property, no person shall assert any claim to the property against the claimants under the deed or will or their successors in title." This statute is "not a traditional statute of limitation but is a curative act with a limitation provision." Holland v. Hattaway, 438 So. 2d 456, 461 (Fla. 1st DCA 1983).

> The purpose of such a statute is to "cure" or clear an existing title to real estate or an interest in it, of formal irregularities, that is, of clouds, doubts and suspicions against the title resulting from technical defects in the form or execution of deeds . . . by limiting the time within which such defects can be asserted to a stated time as measured from some event, such as their recording.

Id. However, "its curative effect extends only to correct technical defects in an otherwise valid deed executed by the person(s) owning the property in question." Davis v. Hinson, 67 So. 3d 1107, 1111-12 (Fla. 1st DCA 2011). Section 95.231(2) "cannot validate conveyances made by persons who have no possessory interest in the property. In other words, it cannot be used to create a title where none existed before." Davis, 67 So. 3d at 1112 (citation omitted) (citing Holland, 438 So. 2d at 461-62).

The trial court concluded that the Hardeys' claim is barred by section 95.231 because the "the property description being disputed by the [Hardeys] has been in place since at least 1971." However, the dispute in this case specifically involves the waterfront strip, and in order for section 95.231 to bar the Hardeys' claim, the 1971 deed

-7-

would have to convey the waterfront strip.  This is the core of the dispute below.  The

Shells have failed to show that there is no disputed issue regarding whether the 1971

deed includes the waterfront strip.  To the contrary, one surveyor opined that the

waterfront strip is not included in the Shells' lot, while a second surveyor was unable to

conclude which lot included the waterfront strip.[1]  Section 95.231 cannot be used to

grant the Shells title in the waterfront strip where none existed under the 1971 deed.

Because the Shells have not demonstrated that the 1971 deed in their chain of title

indisputably conveys the waterfront strip at issue here, the trial court erred in ruling that

section 95.231 operates as a matter of law to bar the Hardeys' claim for declaratory

relief.  The trial court erred in granting summary judgment on this basis.

Reversed and remanded for further proceedings.


ALTENBERND and BLACK, JJ., Concur.

---

[1]Both surveyors speculated that the waterfront strip could belong to the State of Florida.

In addition, the legal description in the 1971 deed does not appear to include the waterfront strip of land at issue here.  The legal description does appear to contain an error in that the southern line of the lot runs in a southwesterly direction 100 feet, which would run it back across Hickory Boulevard.  Any error or confusion in this description appears to relate to the southwest corner of the lot where Hickory Boulevard is, not the strip of waterfront land at issue here.