LaROSE, Judge.
Cody Rogers appeals his conviction and sentence for attempted robbery with a firearm. See §§ 812.13(1), (2)(a); 777.04(1), (4)(c), Fla. Stat. (2008). The trial court erred in admitting Williams rule evidence. See Williams v. State, 110 So.2d 654 (Fla.1959). Accordingly, we are compelled to reverse and remand for a new trial.
Allegedly, Mr. Rogers and Timothy Brooks robbed Jakob Cunnien and William White. Mr. Brooks fatally shot Mr. White. The State charged Mr. Rogers with first-degree felony murder and two counts of robbery. See §§ 782.04(3)(d), 812.13(1), (2)(a), Fla. Stat. (2008).
At Mr. Rogers’ trial, the court allowed the State to present testimony that Mr. Rogers committed a robbery one week before this shooting. The jury acquitted Mr. Rogers of felony murder and one count of robbery. On the remaining robbery count, the jury found him guilty of the lesser offense of attempted robbery with a firearm. See §§ 812.13(1), (2)(a); 777.04(1), (4)(c). The trial court sentenced Mr. Rogers to fifteen years in prison with a ten-year mandatory minimum for using a firearm. See § 775.087(2)(a)(l), Fla. Stat. (2008).
The State introduced testimony from witnesses who saw the shooting. Brian Peterson testified that a group of people were gathered on the street when Mr. Cunnien drove up with Mr. White in the passenger seat. Mr. Cunnien and Mr. White asked Mr. Rogers for drugs. Mr. Rogers directed them to Mr. Peterson. Mr. White purchased some pills from Mr. Peterson. Mr. Brooks asked Mr. Peterson what was in the car. Mr. Peterson replied that he saw a sack of marijuana.
Brody Kraft approached the driver’s side of the car and accused Mr. Cunnien of robbing him a year earlier. Mr. Brooks approached the passenger door, pointed a gun at Mr. White’s head, and asked, “Is this the mother f-r that robbed you?” He told Mr. White to give up whatever they had. Mr. Brooks yanked a chain from Mr. White’s neck.
Chris Everhart testified that Mr. Rogers ran up to the driver’s side window, pointed a gun at Mr. Cunnien, and said, “Give me your shit.” Mr. Peterson testified that Mr. Rogers told Mr. Cunnien to “give it up.” Mr. Cunnien testified that Mr. Rogers said, “Give me what you got.” Mr. Cunnien threw the bag of marijuana out of the car and began to drive away. *992 As he pulled away, a shot rang out and Mr. White was struck in the neck. He subsequently died. Austin Dodge testified that he heard a gunshot and saw Mr. Brooks and Mr. Rogers with guns in their hands. After the gunshot, Mr. Brooks “dumped” a gun, a necklace, and some pills in Mr. Dodge’s car.
Testifying on his own behalf, Mr. Rogers stated that he had been eating at his car and heard Mr. Kraft yelling at Mr. Cun-nien and Mr. White. He saw Mr. Kraft scoot back from the side of the car with his arms up, eyes wide open, and mouth dropped. Mr. Rogers believed Mr. Cun-nien had pulled a gun on Mr. Kraft. Mr. Rogers ran to his car, grabbed a pistol from the door pocket, and ran toward Mr. Cunnien’s car to defend Mr. Kraft. Mr. Rogers claims that when he yelled, “Give it up,” he was telling Mr. Cunnien to give up the gun. When he got up to the car, he saw Mr. Cunnien holding a black .22 or .25 semiautomatic handgun. Mr. Rogers heard a gunshot. He thought Mr. Cun-nien might have shot him. He looked up in shock as the car sped away and saw Mr. Brooks holding a gun. Mr. Rogers said, “Did you shoot him? Did you shoot him? Did you shoot him? Why did you do that?”
The State sought to introduce evidence that Mr. Rogers committed a robbery with Mr. Peterson and Mr. Brooks a week before the shooting. The defense objected. The State proffered the testimony of Mr. Peterson, who claimed that he, Mr. Rogers, and Mr. Brooks drove in Mr. Rogers’ ear to Creekwood Park to buy drugs. On the way there, Mr. Rogers gave Mr. Brooks a gun. When they arrived at Creekwood Park, a man got in the back seat of the car. Mr. Brooks put two guns to the man’s face and said, “Let me get what you got, give it up.” The man surrendered pills and cash and then fled. Mr. Peterson, Mr. Brooks, and Mr. Rogers divided the pills and cash. The robbery was not reported to law enforcement. Mr. Peterson could not identify the victim or offer identifying characteristics. He could not state the day of the week the robbery allegedly occurred. Mr. Peterson admitted that he wanted to be a cooperating State witness to avoid drug and homicide charges. The trial court allowed the testimony into evidence.
Before allowing the State to present Williams rule evidence to the jury, the trial court determined: (1) that there was clear and convincing evidence that Mr. Rogers committed the uncharged crime, (2) that the uncharged crime was similar enough to be relevant, (3) that the uncharged crime was not so temporally remote as to diminish its relevance, and (4) that the prejudicial effect of the evidence did not substantially outweigh its probative value. See Carbonell v. State, 47 So.3d 944, 947 (Fla. 3d DCA 2010). With specific reference to similarity, the trial court found that both robberies involved guns, drugs, and the order to “give it up.” The trial court found the offenses probative of Mr. Rogers’ intent, in light of his claim that he was defending Mr. Kraft instead of committing robbery, and to show that Mr. Rogers had more than a passing acquaintance with Mr. Brooks because he knew him well enough to commit a prior robbery with him.
The trial court did not abuse its discretion in finding that Mr. Peterson’s testimony was clear and convincing that the previous robbery occurred. See Williams v. State, 967 So.2d 735, 747-48 (Fla.2007) (stating that standard of review for trial court’s rulings on admissibility of evidence is abuse of discretion). However, the two events were not similar enough to warrant admission of the testimony. “[Collateral crime evidence is admissible *993 as Williams rule evidence only if it is strikingly similar to the charged crime and the similarity is so unique as to constitute ‘fingerprint’ evidence.” Fitzsimmons v. State, 935 So.2d 125, 127-28 (Fla. 2d DCA 2006). We note that the robberies occurred at different places. The Creek-wood Park robbery allegedly occurred in Mr. Rogers’ car. In the other, there were two victims and they were in Mr. Cun-nien’s car with Mr. Rogers and Mr. Brooks standing outside. Both Mr. Rogers and Mr. Brooks used guns during this robbery, while, at Creekwood Park, only Mr. Brooks used a gun, and it was Mr. Brooks who told the victim to “give it up.” Here, nothing indicates that Mr. Rogers and Mr. Brooks divided anything they obtained, unlike the alleged three-way division of the pills and cash from the Creekwood Park robbery. Finally, this incident involved an altercation between Mr. Cunnien and Mr. Kraft; Mr. Rogers testified to approaching Mr. Cunnien’s car only after the altercation began. These circumstances are not so strikingly similar that they rise to the level of “fingerprint evidence.”
Evidence of the prior robbery should not have been allowed. The minds of an average jury might have found the State’s case significantly less persuasive had the testimony of the prior robbery been excluded. See Schneble v. Florida, 405 U.S. 427, 432, 92 S.Ct. 1056, 31 L.Ed.2d 340 (1972); Harrington v. California, 395 U.S. 250, 254, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969). Thus, the error is not harmless. See State v. DiGuilio, 491 So.2d 1129, 1139 (Fla.1986).
The [harmless error] test is not a suffi-eiency-of-the-evidenee, a correct result, a not clearly wrong, a substantial evidence, a more probable than not, a clear and convincing, or even an overwhelming evidence test.... The focus is on the effect of the error on the trier-of-fact. The question is whether there is a reasonable possibility that the error affected the verdict.... If the appellate court cannot say beyond a reasonable doubt that the error did not affect the verdict, then the error is by definition harmful.
Id. We reverse and remand for a new trial. Consequently, we do not address the other issues raised by Mr. Rogers.
Reversed and remanded.
CASANUEVA and WALLACE, JJ., Concur.