CALOGERO, Justice.
The Louisiana State Bar Association, appearing through its Committee on Professional Responsibility, instituted this disciplinary proceeding against Arthur F. Du-maine by Petition filed on October 27,1987. The charge of misconduct came to the attention of the Bar Association in August of 1986 when Edna Matherne filed a complaint with the Committee on Professional Responsibility alleging that respondent “took retainers from us, did not file case, never sent a written activity report, refused to meet with us, [and] never answered phone calls left on his recorder by me or my nephew.... Attorney Arthur Dumaine did nothing in our legal matter, he refused to see our witnesses by going to their homes or use information left at his office important to our case.”
After conducting an investigation, the Committee on Professional Responsibility sent notice of one specification of misconduct and notice of a formal investigatory hearing to respondent. The specification alleged:
“That in your capacity as Attorney at Law, you were retained to contest cer *271 tain aspects of the succession of one Burton M. Steele. That between June and November of 1985, you did receive the sum of $500.00, part of which was to be used as court costs in contesting the succession. Between the time you were hired and the present, you have done little or no work to earn any fees in the matter. That you have not expended the portion of the $500.00 which was received by you as court costs for court costs. Despite the requests of your clients, you have failed, neglected, or refused to return the unearned portion of legal fees paid, and failed, neglected, or refused to return the sum entrusted to you for payment of court costs, which was not used for payment of court costs, to the client. That you have, in fact, converted the sum tendered to you for court costs to you[r] own use in violation of Disciplinary Rules DR 9-102(B)(3)(4), DR 6-103 (sic) (A)(3), DR 2-110(A)(3), and DR 1-102(A) of the Code of Professional Responsibility of the Louisiana State Bar Association.” [1]
Pursuant to this notice, respondent had until July 15, 1987 to request a continuance of the hearing set for 11:00 A.M. on July 29, 1987. Respondent’s request for a continuance, dated July 20, 1987, was denied by the Committee, which informed respondent that it would again entertain his request for a continuance at the time set for the hearing. Respondent failed to appear at the hearing and was not represented by counsel. After numerous attempts to locate respondent on the morning of July 29, 1987, the Committee proceeded with the hearing.
Following the investigative hearing of July 29,1987, the Committee on Professional Responsibility, by majority vote, was of the opinion that respondent was guilty of serious misconduct as described in the Specification of Misconduct. Upon motion by the Committee, we appointed a commissioner to take evidence and to report his findings of fact and conclusions of law.
The Commissioner’s Hearing was conducted on April 20, 1988. Respondent appeared and was represented by counsel. The Committee introduced into evidence, over respondent’s objection, the entire record of the earlier investigative hearing. Upon termination of this hearing the Commissioner filed with this court his findings of fact, conclusions of law, and a recommendation that respondent be suspended from the practice of law for two years. The Committee on Professional Responsibility concurred in the Commissioner’s findings. Respondent and the Committee submitted briefs to this court and, after oral argument, the matter was submitted for our determination.
The Commissioner’s overruling respondent’s objection to the introduction of the record of the Committee Investigative Hearing conducted in his absence raises certain questions for our resolution at the outset. Did respondent receive adequate notice of the Committee Hearing? If he did, was his absence excusable arid the Committee thus unreasonable in denying the continuance? If respondent did receive notice and his absence was not excusable, as a matter of procedure was the introduction of the record of the Committee Hearing proper? Was due process in any respect offended?
Our review of the record leads us to conclude that the Commissioner was correct in overruling respondent’s objection to the introduction of the record of the Hearing. Respondent clearly received notice of the Committee Hearing as evidenced by his request for a continuance nine days preceding the hearing. Respondent’s absence was not excusable. The Committee attempted to reach respondent in federal court[2] and at his office before proceeding *272 with the hearing. Respondent testified that he was aware that the Committee was trying to contact him, nonetheless, he did not communicate to the Committee the fact that he would not be attending, nor any reason therefor. It is apparent that respondent was attempting to avoid appearance at the hearing. He did not show that he was performing essential and conflicting legal services in federal court.
Having determined that appropriate notice was given, the question becomes whether it was procedurally and constitutionally proper to introduce the record. The jurisprudence is replete with cases to the effect that it is indeed procedurally proper and that due process is not offended by the Committee’s offering in evidence at the Commissioner’s Hearing a transcript of the Committee’s investigative hearing. Louisiana State Bar Association v. Levy, 292 So.2d 492 (La.1974); Louisiana State Bar Association v. Ricard, 237 La. 530, 111 So.2d 761 (1959); Louisiana State Bar Association v. Jacques, 260 La. 803, 257 So.2d 413 (1972); Louisiana State Bar Association v. Sackett, 231 La. 655, 92 So.2d 571 (1957). Furthermore, respondent had the opportunity to subpoena the witnesses who testified against him at the Committee Hearing so that he might confront and examine them at the Commissioner’s Hearing. He did not do so.
In May of 1985, respondent was contacted by Edna Matherne, a 79 year old woman whom he had earlier represented, regarding her concerns about her older sister, one Eva Folse, and Matherne’s possible loss of a prospective intestate inheritance. Eva Folse’s husband, Burton M. Steele, had died the year before, and Eva was his sole legatee. Lincoln West, a 46 year old male, resided with Burton and Eva Folse Steele and remained in the Steele home with Eva after Burton’s death. In May of 1985, Eva Folse was living in a nursing home, and Lincoln West was living in Eva’s home. According to Mrs. Matherne, West was denying Mrs. Matherne access to her sister’s home. Mrs. Matherne suspected that her sister did not have all of her mental faculties and that West would take advantage of her and cause her to leave her property to him instead of to her collateral heirs. Mrs. Matherne, along with a nephew, Charles Naquin, also a prospective collateral heir, and Mr. Donnels, a friend and “lay attorney,” sought respondent’s help. They discussed attempting to declare Eva Folse incompetent to handle her own affairs. Unbeknown to Mrs. Matherne, her sister had already made a will leaving everything to West, whom she had apparently married just three months before, in February of 1985.
At this first meeting in May, respondent requested a $500.00 retainer for costs and expenses.[3] Apparently, there was also agreement to a 25% contingency fee in the event of success. The clients testified to this, as did respondent, although his testimony is inconsistent regarding the purpose of the $500.00. Mrs. Matherne paid respondent $200.00 in cash for which he gave her a cash receipt marked “court costs.” In June of 1985, she gave respondent an additional $50.00 by money order. The remaining $250.00 was sent by check to respondent by Mrs. Matherne’s nephew. Respondent cashed this latter check.
The Commissioner determined that respondent left the clients with the clear impression that he would file a suit to have Eva Folse declared incompetent, and further, if there was a will involved leaving Eva Folse’s estate to West, he would contest the will on the basis that the testator was either incompetent or under duress at the time of its execution.
Essentially, then, respondent was hired by the complainant, Edna Matherne, in May of 1985 and was given $500.00 in connection with the prospect of filing a suit to have Eva Folse declared incompetent and/or, after Eva’s death, contesting her will if one existed.
Two months later, in July, respondent learned that Eva Folse had married Lincoln West and had executed a will favoring West. On October 8, 1985, Eva died. Ten *273 months after Eva’s death, Edna Matherne filed her complaint with the Bar Association. After two years of investigations and hearings, in November of 1988 (one month before oral arguments in this case), respondent apparently returned to Edna Math-erne the $250.00 he had received from her.[4]
This dispute has to do with whether respondent performed the legal services which he had undertaken to perform, namely, to institute proceedings to have Eva Folse declared incompetent and/or to contest her will if one existed.
The complainant alleges that respondent did next to nothing. He would not return her telephone calls, and if by chance she did reach him, he gave her absurd excuses as to why he was unable to discuss the case at that time. She claims she provided respondent with the names of witnesses who could attest to Eva Folse’s incompetency, but respondent made no effort to interview them. Complainant testified that respondent misled her by telling her that he had filed a suit in District Court in furtherance of her claim when he actually had not done so. The crux of her claim is that once respondent received the $500.00 from her and her nephew he never contacted her in any way. He never accounted to her for the money and he kept it.[5] Ultimately, complainant had to hire another attorney in her effort to protect any interests she may have had in Eva Folse’s estate.
On the other hand, respondent claims he spent 30 to 40 hours working on this case and that his inability to institute legal proceedings was prompted by complainant’s lack of cooperation in producing witnesses to Eva Folse’s mental condition. Respondent claims he did not pursue any challenge to Eva Folse’s will, upon learning of its existence in July of 1985, because the attorney who executed the will informed him that Eva Folse appeared lucid and compé-tent when the will was executed. Respondent testified that the attorney threatened to sue him for damages if he attacked the will. Respondent’s position is that because he was not provided with witnesses by the complainant who could attest to Eva’s incapacity, he was unable to do anything in furtherance of her case.
The Commissioner’s findings of fact are supported by the record and we adopt them as ours. His conclusions of law are also correct. He found that respondent should have “caused an investigation to take place” and “take[n] responsibility for the investigation” of this incompetency/will contest. He further should have pursued witnesses and experts who might have supported his clients’ position. Upon speaking with Eva Folse’s attorney and hearing that she appeared competent during the execution of her will, respondent should have informed complainant that she had no case, if that was his opinion, and returned her deposit or as much of it as he believed she was due. Instead, respondent did not report his findings, although he testified that he felt it “an exercise in futility to try to set that will aside,” and he did not return the unexpended portion of the $500.00.
The Commissioner also concluded that respondent did not properly preserve the identity of complainant’s funds. He did not place the funds into an attorney’s trust account. He did not expend the amount for court costs on court costs, did not make an accounting to the complainant for any amount expended and did not have any receipts to prove any expenditures. Upon determining that he had no viable cause of action to set aside the will, respondent had an obligation to return the funds advanced to him, but he did not do so. Respondent sat on the case for another year and a half, then offered to return the money only to resolve the complaint filed against him.
There is also evidence in the record to support the Commissioner’s finding of át- *274 torney misconduct in connection with these proceedings. Respondent’s overall attitude and demeanor during the proceedings were inappropriate. He exhibited a certain disdain for the complainant and the Commissioner in the investigation of this matter. In addition, he changed his testimony repeatedly.[6]
The Commissioner concluded that respondent was guilty of misconduct, in violation of DR 1-102(A)(4), (5), (6); neglect, in violation of DR 6-101(A)(3); and failure to preserve the identity of a client’s property, in violation of DR 9-102(B)(3), (4). With these conclusions as well, we agree.
When imposing disciplinary sanctions, this court must consider not only the seriousness of the offense involved but also the existence of any aggravating and mitigating factors.
The violations in this particular case are not grave. Respondent was dealing with a relatively small amount of money[7] which was ultimately returned to complainant, probably,[8] albeit at a time late in these proceedings. This lawyer’s conduct in this case, standing alone, would normally not give rise to a suspension from the practice of law; a public reprimand would perhaps be more appropriate, especially where, as in this case, there may have been no great injury to the client.
On the other hand, respondent has previously received four reprimands [9] for disciplinary violations, two private and two public. All of the prior violations involved neglect and three of them misconduct. “Suspension is generally appropriate when a lawyer engages in a pattern of neglect and causes injury or potential injury to a client.” ABA Standards For Imposing Lawyer Sanctions, § 4.42. (Emphasis provided). As evidenced by this case, respondent’s conduct has not been deterred by reprimands, either private or public. Considering the conduct under review and his four prior disciplinary violations, we conclude that an eighteen (18) month suspension from the practice of law is appropriate.
DECREE
For the reasons assigned, it is ordered, adjudged and decreed that Arthur Dumaine *275 be suspended from the practice of law for a period of eighteen (18) months, effective upon the finality of this decision.

. The Rules of Professional Conduct replaced the Code of Professional Responsibility, effective January 1, 1987, but the allegations in this case occurred prior to the effective date. The counterparts to the disciplinary rules cited in the charge above are Rules 1.15, 1.1, 1.3, 1.16, and 8.4.

. Respondent’s request for a continuance was premised on his need to appear at a sentencing in federal court at 9:00 A.M. the morning of the hearing. In denying the continuance, the Committee informed respondent that "the sentencing might well be concluded well before 11:00 A.M.,” the time set for the hearing.

. The Commissioner’s conclusion after reviewing the testimony of complainant and respondent was that the money was for costs and expenses.

. Respondent had not repaid Mrs. Matherne pri- or to the Commissioner’s hearing. Respondent alleged during oral argument before this court that he did pay her the $250.00 on November 14, 1988. He thereupon filed an affidavit with this court on the date of oral argument, December 12, 1988, purportedly signed by Edna Math-eme on November 14, 1988 attesting to receipt of $250.00 and the "withdrawal of her complaint” against respondent to the Louisiana State Bar Association.

. See footnote #4 hereinabove.

. The Commissioner's report states: “The Commissioner also finds that the candor, attitute, and honesty of respondent during this hearing left a lot to be desired. For example, respondent clearly told Mr. Ours, under cross-examination, that he was not hired to contest the will of Eva Folse. Yet, when respondent was pressed by the Commissioner regarding this subject matter respondent testified that was exactly what he was hired to do. Further, respondent was less that candid and honest under oath with regards to the purposes for which the $500.00 retainer was received. In his letter to the Bar Association of January, 13 1987, respondent clearly stated that the retainer for $500.00 was taken against costs and expenses. Yet, at the Commissioner’s hearing respondent took the position that $200.00 was for costs and $300.00 was for an unearned fee. At a later point in the testimony, respondent implied that all of the money was for costs. Respondent then revised his sworn testimony for a third time and said the $500.00 was part for unearned fee and then ultimately that it was an earned fee or retainer taken for a consultation. This made five (5) inconsistent positions respondent took before the Commissioner, under oath, with regard to the $500.00 paid to him by the client.”

. Respondent was representing two cliénts who were prospective intestate heirs to the estate of Eva Folse. One client is complainant, Edna Matherne, who gave respondent $250.00 for costs and expenses. The other $250.00 was tendered by her nephew, Charles Naquin, who did not file a complaint against respondent.

. See footnote #4 hereinabove.

. On April 4, 1979, respondent was issued a formal private reprimand resulting from his taking a retainer to handle a divorce, then failing to meet the client on three occasions to confirm a default judgment of divorce. On May 11, 1979, respondent was issued a second formal private reprimand when, after numerous requests by his client, he failed to dismiss a collection suit after a partial collection was made. On December 2, 1985, respondent was issued a public reprimand resulting from his failure to appear for two pre-trial conferences causing his client's personal injury suit to be dismissed. On April 10, 1987, respondent was issued a second public reprimand resulting from his failure to take appropriate post-conviction relief actions in the representation of a client.
A sixth disciplinary proceeding against respondent is pending in this court (No. 88-B-1398) arising from respondent's conviction and one year sentence for violating La.R.S. 14:94, criminally negligent discharge of a firearm.