935 So.2d 125 (2006)
William E. FITZSIMMONS, Appellant,
v.
STATE of Florida, Appellee.
No. 2D04-3313.
District Court of Appeal of Florida, Second District.
August 11, 2006.
*126 James Marion Moorman, Public Defender, and Richard J. Sanders, Assistant Public Defender, Bartow, for Appellant.
Charles J. Crist, Jr., Attorney General, Tallahassee, and Cerese Crawford Taylor, Assistant Attorney General, Tampa, for Appellee.
WALLACE, Judge.
William E. Fitzsimmons raises two points in this appeal of his conviction for the armed robbery of a bank. Fitzsimmons' first point is without merit, and we will not comment on it further. On the second point, we hold that the trial court committed reversible error in permitting the admission of improper collateral crime evidence at Fitzsimmons' trial. Accordingly, we reverse Fitzsimmons' judgment and sentence, and we remand this case for a new trial.

FACTS AND PROCEDURAL HISTORY
At trial, the State presented evidence that a man wearing a disguise robbed a Regions Bank branch in Hudson on December 11, 2001. The "wheelman," Lawrence Gillespie, waited outside the bank in a getaway car. Inside the bank, the "stickup man" threatened the bank employees and took cash from their custody and control. At trial, Gillespie testified for the State that Fitzsimmons was the disguise-wearing robber. The bank employees were not able to identify Fitzsimmons as the perpetrator of the crime.
*127 Three days after the Regions Bank robbery, two undercover detectives observed Fitzsimmons and Gillespie making suspicious movements outside a SouthTrust Bank branch. This bank branch was also located in Pasco County. When Gillespie realized that he and Fitzsimmons were being watched, he informed Fitzsimmons. The two men left the area separately. Gillespie departed on foot, and Fitzsimmons drove away in a sport utility vehicle (SUV). The detectives followed Gillespie in an unmarked car. Shortly thereafter, Fitzsimmons met Gillespie at a nearby gas station.
While Gillespie was getting into the SUV, the detectives requested assistance from a marked patrol unit. When the marked unit arrived, both police vehicles followed the SUV. Not long after the second vehicle arrived, a high-speed chase ensued, ending in a crash, and Gillespie surrendered. Fitzsimmons fled the crash scene on foot and stole a second vehicle. After Fitzsimmons crashed the second vehicle, he ran through a residential neighborhood and swam across a canal. Police ultimately found him hiding in a shed. Fitzsimmons was charged with armed robbery for the Regions Bank heist, and he was charged with grand theft auto and felony fleeing and eluding for his actions on December 14.
At a pretrial hearing, the trial court heard arguments concerning the State's proposed use of evidence of uncharged crimes. The defense argued that Fitzsimmons' actions in "casing" the SouthTrust Bank were not sufficiently similar to the robbery of the Regions Bank to constitute Williams[1] rule evidence. The State responded that the Regions Bank evidence and the SouthTrust Bank evidence were inextricably intertwined. The State also asserted that Fitzsimmons' actions at the two banks were so similar that the South-Trust evidence should be admitted as Williams rule evidence. The trial court ruled that the "second casing [of the SouthTrust Bank] is so intertwined as to not allow [it] would be confusing to this jury." After the hearing, the trial court entered an order that permitted the State to introduce evidence of Fitzsimmons' actions at the SouthTrust Bank as "Williams Rule Evidence and/or inextricably intertwined evidence."
On the morning of jury selection, the trial court severed the grand theft auto and felony fleeing and eluding charges from the armed robbery charge. However, the State notified the trial court that the evidence relating to the severed charges was going to be introduced because the trial court had granted the State's Williams rule motion on this evidence. At the beginning of the State's case-in-chief, the trial court granted Fitzsimmons a standing objection to all Williams rule evidence. On appeal, Fitzsimmons asserts that the trial court erred when it permitted the State to introduce evidence of Fitzsimmons' actions outside the SouthTrust Bank and the prolonged police chase that led to Fitzsimmons' arrest, including the theft of a second getaway vehicle.

DISCUSSION
A trial court's decision to admit collateral crime evidence is reviewed for an abuse of discretion. Kulling v. State, 827 So.2d 311, 313 (Fla. 2d DCA 2002). A party may be permitted to introduce collateral crime evidence when it is relevant to prove a material fact; however, this type of evidence is inadmissible when it is relevant solely to prove bad character or propensity. § 90.404(2)(a), Fla. Stat. (2003). Because of the strict standard of relevancy that applies, collateral crime evidence *128 is admissible as Williams rule evidence only if it is strikingly similar to the charged crime and the similarity is so unique as to constitute "fingerprint" evidence. Kulling, 827 So.2d at 314.
The collateral crime evidence of Fitzsimmons' actions outside the South-Trust Bank and the resulting police chase does not meet the strict standard of similarity required for admissibility as Williams rule evidence. The State presented no evidence that Fitzsimmons' behavior outside the SouthTrust bank was similar to the perpetrator's behavior at the Regions Bank. In addition, there was no testimony that Fitzsimmons left the South-Trust Bank in the same manner as the perpetrator had left the Regions Bank. The State did not establish that Fitzsimmons' actions at the SouthTrust Bank were so strikingly similar to the perpetrator's actions at the Regions Bank that the evidence was properly admissible as Williams rule evidence.
Even if collateral crime evidence is inadmissible Williams rule evidence, collateral crime evidence may be admissible if it is inextricably intertwined with the crime charged. Griffin v. State, 639 So.2d 966, 968 (Fla.1994). Such evidence is admissible under section 90.402 because it is a relevant and inseparable part of the act that is in issue and it is necessary to admit the evidence to adequately describe the act. Id. at 968; Gray v. State, 873 So.2d 374, 377 (Fla. 2d DCA 2004). Nevertheless, Fitzsimmons' actions outside the SouthTrust Bank and the subsequent police chase were not so intertwined with the Regions Bank robbery that it was necessary to describe them in order to accurately explain the Regions Bank robbery. The acts took place three days apart, and the State did not present evidence that the two incidents were part of a crime spree. The collateral crime evidence was not inextricably intertwined, and thus it was inadmissible.
The State argues that evidence of Fitzsimmons' flight was admissible because it was indicative of Fitzsimmons' consciousness of guilt. See Thomas v. State, 748 So.2d 970, 982-83 (Fla.1999); Virgo v. State, 931 So.2d 1010 (Fla. 4th DCA 2006). However, the State did not present this argument to the trial court when the admissibility of the collateral crime evidence was called into question. Thus the trial court did not have an opportunity to rule on whether the flight evidence would have been admissible to prove Fitzsimmons' consciousness of guilt. Moreover, the defense never had an opportunity to be heard on this alternative theory of admissibility. Under these circumstances, it would be improper to rely on the "tipsy coachman" doctrine to affirm the trial court's ruling on the admissibility of this evidence. See Robertson v. State, 829 So.2d 901, 906-09 (Fla.2002). In addition, the challenged evidence included extensive testimony about Fitzsimmons' "casing" of the SouthTrust Bank before the flight occurred, as well as his theft of a motor vehicle during the flight itself. The trial court had previously severed the theft of a motor vehicle offense from the trial for the robbery at Regions Bank. Thus the evidence in question was not limited to Fitzsimmons' flight from the police. We express no opinion on whether evidence of Fitzsimmons' flightif properly limited might be admissible for the purpose of demonstrating his consciousness of guilt of the Regions Bank robbery that had occurred three days before.
The Florida Supreme Court has held that "the erroneous admission of irrelevant collateral crimes evidence `is presumed harmful error because of the danger that a jury will take the bad character *129 or propensity to crime thus demonstrated as evidence of guilt of the crime charged.'" Robertson, 829 So.2d at 913-14 (quoting Castro v. State, 547 So.2d 111, 115 (Fla. 1989)). The harmless error test places the burden on the State to prove beyond a reasonable doubt that there is "no reasonable possibility that the error contributed to the conviction." State v. DiGuilio, 491 So.2d 1129, 1135 (Fla.1986).
Here, the State has not met its burden. Gillespie was the only witness who identified Fitzsimmons as the bank robber. Gillespie's testimony was suspect because he had entered a plea bargain and expected to receive leniency from the State for his testimony. The State did not present any physical evidence that linked Fitzsimmons directly to the Regions Bank robbery. Fitzsimmons testified at trial and denied that he had committed the stickup at the Regions Bank branch. Fitzsimmons' testimony suggested that Gillespie had committed the December 11 offense on his own.
The inadmissible collateral crime evidence became a feature of the trial because of the number of witnesses who testified about it and because of the prosecutor's repeated references to it during her closing argument. Under these circumstances, we are unable to conclude that the admission of the collateral crime evidence was harmless. Accordingly, we reverse Fitzsimmons' judgment and sentence for armed robbery, and we remand for a new trial.
Reversed and remanded.
ALTENBERND, J., and DANAHY, PAUL W., Senior Judge, Concur.
NOTES
[1] Williams v. State, 110 So.2d 654 (Fla.1959).