NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING
MOTION AND, IF FILED, DETERMINED

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

SECOND DISTRICT

PAUL MAY, individually and as legal         )
guardian of Jean May,                       )
                                            )
                Appellant,                  )
                                            )
v.                                          )         Case No. 2D13-5626
                                            )
HCA HEALTH SERVICES OF FLORIDA,             )
INC., d/b/a Blake Medical Center;           )
FRANCISCO ESPARZA, M.D.; DAVID              )
DIVITA, M.D.; and PINNACLE MEDICAL          )
GROUP, P.A.,                                )
                                            )
                Appellees.                  )
_____         )

Opinion filed May 1, 2015.

Appeal from the Circuit Court for Manatee
County; Peter A. Dubensky, Judge.

Celene H. Humphries and Tyler K. Pitchford
of Brannock & Humphries, Tampa, and
Gene Odom and Michael Valen of Martinez
Odom Law Group, P.A., Brandon, for
Appellant.

Karen S. Cox and Joshua P. Welsh of Bush
Ross, P.A., Tampa, for Appellee HCA
Health Services of Florida, Inc.

No appearance for remaining Appellees.

MORRIS, Judge.

Paul May, individually and as legal guardian for Jean May, appeals a final summary judgment entered in favor of HCA Health Services of Florida, Inc., d/b/a Blake Medical Center (the Medical Center), in the Mays' medical negligence action. The Mays' original complaint listed Blake Medical Center Auxiliary (the Auxiliary) as a defendant. During the pendency of the case, the Auxiliary filed a motion for summary judgment wherein it asserted that it was entitled to judgment because it was not a healthcare provider and did not employ healthcare professionals.[1] The Auxiliary and the Mays then entered into a stipulation for the Medical Center to be substituted for the Auxiliary as a defendant. However, once the Medical Center became a defendant in the case, it filed a motion for summary judgment arguing that the statute of limitations had run. The trial court granted summary judgment on that basis. Because we conclude that the mistake in naming the proper defendant was merely a misnomer, that all parties knew that the Mays intended to sue the Medical Center, and that there is a substantial identity of interest between the Medical Center and the Auxiliary, we hold that the trial court erred by granting a final summary judgment, and we hereby reverse.

## I.    FACTS

In November 2008, Mr. May took Mrs. May to the Medical Center's emergency room. The Medical Center admitted Mrs. May under suspicion that she may have been suffering from a stroke. However, the neurologist who evaluated her concluded that her symptoms were nothing more than disequilibrium and vertigo and

_____

[1]The Auxiliary explained that it provides support services to the hospital, but it does not provide medical care.

recommended her discharge. A second doctor at the Medical Center came to the same conclusion, and Mrs. May was discharged.

A few hours after her discharge from the Medical Center, Mrs. May returned because her physical condition had significantly deteriorated. A third physician examined her, ordered a CAT scan with contrast of her brain, and ultimately diagnosed her as suffering from a severe stroke. Mrs. May is now wheelchair bound, unable to speak, and is permanently incontinent.

In March 2011, the Mays filed a complaint against the two physicians who originally discharged her. The Mays also named the Auxiliary as a defendant believing it to be the Medical Center. In addition to sharing similar names, the Medical Center and the Auxiliary share the same legal counsel and the same physical address. In filings with the Florida Secretary of State, the Auxiliary lists the Medical Center as its principal place of business along with listing the Medical Center's physical address as both the Auxiliary's mailing address and the Auxiliary's registered agent's address.

After receiving the complaint, the Auxiliary's counsel filed a generic answer denying all of the Mays' claims and listing affirmative defenses, most of which are common to tort litigation. Although the Auxiliary generally denied the Mays' allegations that it was a hospital or held itself out as a hospital and that it had any hospital-patient relationship with Mrs. May, it did not explain the nature of the Auxiliary or its relationship with the Medical Center. Only one of the affirmative defenses came close to revealing that the Auxiliary was not the medical provider for Mrs. May. In the first affirmative defense, the Auxiliary stated it was "not a proper party to this action." There was no factual explanation provided as to why the Auxiliary was not a proper

party. Two other affirmative defenses were more vaguely worded, though it was argued to this court that they could also be interpreted as alleging that the Medical Center was the proper defendant.

In May of 2011, the Mays filed a motion to strike several of the Auxiliary's affirmative defenses. On that same day, the Auxiliary began serving notices of its intention to serve nonparty subpoenas on various medical-related entities and providers in an effort to collect Mrs. May's medical records. Between May 2011 and August 2012, the Auxiliary sent subpoenas to at least eighty-three of Mrs. May's nonparty medical providers. In June 2011 and February 2012, the Auxiliary served over thirty-five requests seeking copies of various medical records from other entities.

In its March 2012 motion for summary judgment, the Auxiliary revealed its relationship to the Medical Center; the Auxiliary also revealed that it was not a licensed healthcare provider or facility. Notably, this was after the statute of limitations had run. In response to this information, the Mays and the Auxiliary entered into a joint stipulation acknowledging that the Mays had mistakenly named the Auxiliary as defendant and substituting the Medical Center in the Auxiliary's place. The stipulation specifically provided that "[d]efendants do not waive any affirmative defenses, including but not limited to the statute of limitations."

Prior to the entry of the stipulation, the Auxiliary had failed to respond to outstanding requests for copies of records pending from other defendants. After the Medical Center was substituted for the Auxiliary as a party to the action, the Medical Center fulfilled seventy-three of those requests.

In October 2012, the Mays filed their amended complaint naming the Medical Center as a defendant in the case. The Medical Center filed its answer and affirmative defenses, adding the affirmative defense that the statute of limitations had run. The Medical Center subsequently filed its motion for summary judgment based on the statute of limitations argument.

In their response to the Medical Center's motion for summary judgment, the Mays asserted that the Auxiliary had "not conducted discovery or otherwise participated in this lawsuit in any manner." This was despite the fact that the Auxiliary served nonparty discovery requests. The Mays explained that

> [a]lthough [the] Auxiliary, by and through legal counsel at Bush Ross, P.A., answered the original complaint knowing Plaintiff incorrectly named the hospital where the alleged medical negligence occurred, it was [the] Medical Center, by and through the same legal counsel at Bush Ross, P.A., that conducted all discovery and participated in every aspect of this pending litigation.

Thus it is clear that the Mays' theory of misnomer was predicated on the idea that the Medical Center was acting through the Auxiliary when serving the nonparty discovery requests. The Mays also asserted that the Medical Center was estopped from challenging its substitution into the case because the trial court approved the stipulation of substitution between the parties on the basis that the Mays had incorrectly named the corporate defendant.

At the summary judgment hearing, the Medical Center's counsel argued at length that there was no overlap or identity of interest between the Medical Center and the Auxiliary, but even if there was such an overlap, that fact would not be sufficient to permit the amended complaint to relate back to the filing of the original complaint. The

Medical Center's counsel also argued that the Medical Center "did not engage in discovery . . . until the parties had been changed out and the right defendant was in" and that, therefore, this was not a case "where there was any kind of lulling."

In November 2013, the trial court granted the Medical Center's motion for summary judgment. In doing so, the trial court found that the complaint filed against the Auxiliary was not a misnomer because the Medical Center was a separate corporate entity and that the Auxiliary's answer should have placed the Mays on notice of their mistake. The trial court also relied on Gray v. Executive Drywall, Inc., 520 So. 2d 619 (Fla. 2d DCA 1988), finding that there was no overlap of interest between the Auxiliary and the Medical Center because the Auxiliary did not provide medical care. Lastly, the trial court noted that the stipulation between the Mays and the Auxiliary specifically stated that the affirmative defense of statute of limitations was being reserved.

## II.    ANALYSIS

" 'Summary judgment is proper only if (1) no genuine issue of material fact exists, viewing every possible inference in favor of the party against whom summary judgment has been entered and (2) the moving party is entitled to a judgment as a matter of law.' " Hardey v. Shell, 144 So. 3d 668, 671 (Fla. 2d DCA 2014) (quoting Armiger v. Associated Outdoor Clubs, Inc., 48 So. 3d 864, 869 (Fla. 2d DCA 2010)). We review a final summary judgment de novo. Volusia Cnty. v. Aberdeen at Ormond Beach, L.P., 760 So. 2d 126, 130 (Fla. 2000).

We first note that the Medical Center contends that because the Mays did not file a reply in response to the Medical Center's answer and affirmative defenses, the Mays have waived any argument that the action is barred by the statute of limitations

because a misnomer occurred and/or because there was an identity of interest between the Auxiliary and the Medical Center. However, the Mays filed a response to the Medical Center's motion for summary judgment wherein they raised the misnomer issue and asserted, somewhat inartfully, that the Medical Center had been acting as the Auxiliary when it engaged in discovery. And the transcript of the hearing reveals that the trial court was clearly aware of all of the arguments being made. Thus we are not persuaded by the Medical Center's preservation argument. Cf. Corya v. Sanders, 76 So. 3d 31, 33 (Fla. 4th DCA 2011) (holding that defendant waived reliance on New York law because (1) she relied on Florida law in answer and affirmative defenses and failed to file any response or affidavits in opposition to the motion for summary judgment and (2) there was no transcript of the motion hearing provided). Further, the Medical Center never raised the issue of the Mays' failure to file a reply before the trial court. Thus, it cannot make a tipsy coachman argument on that basis here. See Fitzsimmons v. State, 935 So. 2d 125, 128 (Fla. 2d DCA 2006) (holding that where State failed to raise alternative argument below and thus defense did not have an opportunity to respond, "it would be improper to rely on the 'tipsy coachman' doctrine to affirm the trial court's ruling").

On the merits then, the issue is whether the Mays' mistake in naming the Auxiliary in their complaint constitutes a misnomer for which relief is available. Ordinarily, if a plaintiff sues the wrong corporate party, "the mistake cannot be remedied after the period of limitations has elapsed." B & H Sales, Inc. v. Fusco Corp., 342 So. 2d 105, 107 (Fla. 2d DCA 1977). However, there is an exception where, after the limitations period has run, "a substitution of a corporation as a party defendant for

another corporation amounts to no more than rectifying a misnomer." Id. In that situation, "the statute of limitations will not be a bar," id., and we allow the amendment of a complaint and relation back to the original filing where the new party will not be prejudiced, see Arnwine v. Huntington Nat'l Bank, N.A., 818 So. 2d 621, 624 (Fla. 2d DCA 2002). "Thus, relation back will usually apply when the new party 'knew or should have known that the plaintiff had made a mistake or was guilty of a misnomer as concerns the correct identity of the defendant so that the added party was deemed to have suffered no prejudice by being tardily brought in or substituted as a party.' " Arnwine, 818 So. 2d at 624 (quoting Kozich v. Shahady, 702 So. 2d 1289, 1291 (Fla. 4th DCA 1997)).[2]

In B & H Sales, Inc., the plaintiff sued a corporation by the name of Sunshine Associates, Inc., regarding a contractual dispute. 342 So. 2d at 106. Sunshine Associates filed various defensive pleadings including an answer with affirmative defenses. Sunshine Associates also responded to discovery requests. Id. It was only after B & H Sales moved for summary judgment that Sunshine Associates revealed that the correct name of the defendant was The Fusco Corporation, which had been doing business as Sunshine Associates. Id. at 106-07. On those facts, we concluded that applying the statute of limitations to bar the amended complaint would be "manifestly unjust" because the mistake in naming the defendant was merely a misnomer. Id. at 107. Thus, we held that the amended complaint related back to the

---

[2]The relation back doctrine is in accordance with the policies that Florida Rule of Civil Procedure 1.190(c), permitting the amendment of pleadings, "should be liberally construed" and that "cases should be resolved on the merits whenever possible." Caduceus Props., LLC v. Graney, 137 So. 3d 987, 993 (Fla. 2014).

original pleading.  Id.; see also Schwartz v. Metro Limo, Inc., 683 So. 2d 201, 203-04 (Fla. 3d DCA 1996) (holding that where incorrectly named defendant filed a motion to dismiss and an answer with affirmative defenses and actively participated in discovery, it "led the plaintiff to believe that the correct defendant had been sued" and that the plaintiff was therefore entitled to amend its complaint to correct the misnomer); Galuppi v. Viele, 232 So. 2d 408, 410-11 (Fla. 4th DCA 1970) (similar).

In addition to an incorrectly named party's active participation in the litigation, there are other factors that courts have considered in holding that a misnomer occurred.  See, e.g., Darden v. Beverly Health & Rehab., 763 So. 2d 542, 543 (Fla. 5th DCA 2000) (same law firm, same corporate address, overlapping directors, and same registered agent); Schwartz ex rel. Schwartz v. Wilt Chamberlain's of Boca Raton, Ltd., 725 So. 2d 451, 453 (Fla. 4th DCA 1999) (same officers, same registered agent, and same attorney); Kozich, 702 So. 2d at 1291 (same address, phone, and fax numbers, overlapping officers, directors, and shareholders, same registered agent, and same attorney); Metro Limo, Inc., 683 So. 2d at 203 (similar names, same premises, same principal operating officer, same registered agent, and same attorney); Palm Beach Cnty. v. Savage Constr. Corp., 627 So. 2d 1332, 1333-34 (Fla. 4th DCA 1993) (overlapping officers and directors, shared consolidated financial and registration statements, same attorney, same registered agent, and same premises with shared, single telephone line).  Some of those factors are present in this case.

We acknowledge that in Gray, we rejected the claim that the plaintiff's mistake in failing to name an additional defendant (as owner of the originally named defendant) constituted a misnomer despite the facts that both entities had some

-9-

common ownership of stock, occupied the same office building (though in different offices), used the same person to sign contracts, the same attorney, and the same insurance carrier and despite the fact that the proper defendant knew of the litigation and would not have been prejudiced by being added as a party. Gray, 520 So. 2d at 620-21. But Gray does not control the outcome in this case. This is because in Gray, the originally named defendant "did not conduct the type of extensive discovery aimed at prolonging matters until the statute of limitations expired." Id. at 621.

Here, in contrast, the Auxiliary—the incorrectly named defendant—filed an answer and affirmative defenses. The Auxiliary's counsel, who also happens to be counsel for the Medical Center, then engaged in discovery, including serving subpoenas on eighty-three of Mrs. May's nonparty medical providers and serving thirty-five requests for copies of various medical records from other entities. It was only after the statute of limitations had run that the Auxiliary, for the first time in its motion for summary judgment, explicitly revealed its relationship to the Medical Center and that it [the Auxiliary] was not a licensed healthcare provider or facility, i.e., it was not the proper defendant.

While we do not dispute that a defendant has "no obligation to advise [a] plaintiff who[m] to sue," Gray, 520 So. 2d at 621, we also adhere to the principle that "[t]he trial of a lawsuit should be a sincere effort to arrive at the truth." Cabot v. Clearwater Constr. Co., 89 So. 2d 662, 664 (Fla. 1956)). "It is no longer a game of chess in which the technique of the maneuver captures the prize." Id.; see also Metro Limo, Inc., 683 So. 2d at 203 (agreeing that the general rule that a defendant does not have an obligation to advise the plaintiff of his mistake in naming the proper defendant

is inapplicable where the incorrectly named defendant, through its overt acts, lulls the plaintiff into a false sense of security) (citations omitted). The Auxiliary's conduct in responding to the complaint and engaging in discovery up to the point of filing its motion for summary judgment—in conjunction with the facts that the Auxiliary had a similar name to the Medical Center, shared the same physical address as the Medical Center, utilized the same counsel as the Medical Center, and used the Medical Center's physical address for purposes of mailing and for service of process—led the Mays to believe they had sued the correct party. The mistake here amounts to nothing more than a misnomer and it would be "manifestly unjust" to apply the statute of limitations as a bar to the amended complaint under the facts of this case. See B & H Sales, Inc., 342 So. 2d at 107. Further, because it was clear from the Mays' complaint that the subject was the alleged negligence of the Medical Center, and because the Medical Center, through its counsel " 'knew or should have known that the [Mays] had made a mistake or [were] guilty of a misnomer' " in identifying the correct defendant, the Medical Center would not be prejudiced by the amendment. Arnwine, 818 So. 2d at 624 (quoting Kozich, 702 So. 2d at 1291); see also St. John's Hosp. & Health Ctr. v. Toomey, 610 So. 2d 62, 64 (Fla. 3d DCA 1992) (holding that defendant estate was not prejudiced by amendment of complaint to correct misnomer in name between hospital and its similarly named fundraising foundation where the complaints were identical except for correction of the name and clearly indicated the subject matter of the suit and where estate had actual knowledge that foundation was the intended plaintiff).

Finally, unlike the trial court, we do not fault the Mays for failing to inquire further after the Auxiliary stated in its first affirmative defense that it was "not a proper

party to this action." Such a conclusory statement, without supporting facts, is legally insufficient. See Leal v. Deutsche Bank Nat'l Trust Co., 21 So. 3d 907, 909 (Fla. 3d DCA 2009); Cady v. Chevy Chase Sav. & Loan, Inc., 528 So. 2d 136, 138 (Fla. 4th DCA 1988). Additionally, the Auxiliary's conduct in engaging in discovery was inconsistent with its assertion that it was not a proper party to the action. That conduct, in conjunction with the facts suggesting a substantial identity of interest noted herein, essentially led the Mays to believe that no further inquiry was necessary.

We therefore hold that the trial court erred by entering a final summary judgment in favor of the Medical Center.

Reversed and remanded for proceedings in conformance with this opinion.


ALTENBERND and LAROSE, JJ., Concur.