NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING
MOTION AND, IF FILED, DETERMINED

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

SECOND DISTRICT

FREDRICK LIVINGSTON,  )
                      )
        Appellant,    )
                      )
v.                    )          Case No. 2D13-4502
                      )
STATE OF FLORIDA,     )
                      )
        Appellee.     )
                      )

Opinion filed March 31, 2017.

Appeal from the Circuit Court for
Hillsborough County; Steven Scott
Stephens, Judge.

Deana K. Marshall of Law Office of Deana
K. Marshall, P.A., Riverview, for Appellant.

Pamela Jo Bondi, Attorney General,
Tallahassee, and David Campbell,
Assistant Attorney General, Tampa,
for Appellee.


MORRIS, Judge.

        Fredrick Livingston appeals his conviction after a jury trial for the offense

of robbery, raising several issues that we have determined to be without merit.  We

affirm his conviction and sentence, but we write to address the trial court's admission

into evidence of two out-of-court descriptions of the suspect received by deputies on the night of the offense.

At trial, the State presented the testimony of three witnesses: the victim and two sheriff's deputies. The victim first testified that at approximately 7:20 in the evening on December 21, 2012, he was walking to catch the bus to work in the Progress Village area of Hillsborough County. The victim testified that a group of five men began to follow him. He crossed over Allamanda Boulevard, and the men continued to follow him. Two men cut in front of him, and the other men surrounded him. One man began to ask him questions regarding his name and where he lived. The victim was very scared and nervous, but he got a good look at the man who was asking the questions because they were under a lamp post and that man was the one speaking to him. The victim described the man as African-American, with short, shoulder length dreads, between the ages of twenty and thirty, approximately 5'8" tall, and weighing between 140 and 150 pounds. The man wore a black jacket with two white stripes down his chest, a white undershirt, and dark jeans. The victim said that the man spoke to him for what "felt like two or three minutes." Then, the man punched the victim with a closed fist in the victim's jaw and upper lip, and another man pushed the victim from behind. They repeatedly hit the victim, and he felt them grab his phone and other items from his pockets. In court, the victim identified Livingston as the man who first hit him. After a few seconds, the men ran away down Allamanda. The victim rushed home and called 911 from his mother's cell phone.

After law enforcement responded, the victim was driven to where Livingston had been found. Livingston was standing underneath a light post. The

-2-

victim testified that he was 100% sure that Livingston was the person who hit him and that he had no doubt in his mind. The victim stated that in the bright lighting of the courtroom, he could tell that Livingston had a dark mark on his face, but the victim explained that he did not see that mark on the night of the offense because it was darker that night.

During cross-examination, the victim admitted that he was dizzy after he was hit in the head numerous times and that he had a mini-panic attack that night. The victim did not remember seeing a tattoo or scar on the suspect's face, and the victim did not remember that the suspect had a mustache, a beard, a goatee, or peach fuzz on his face. The victim admitted that Livingston's tattoo was visible in the photograph taken on the night of his arrest, but the victim said that the flash on the camera lightened it up and that he could barely see the tattoo in the photograph. He also stated that the stripes on the jacket may have been gray but they appeared white to him that night.

Deputy Jonathan Rosa testified that he responded to the victim's 911 call that night. He interviewed the victim, who was shaken up and was "still under the stressor of being robbed." Deputy Rosa was able to obtain a description of the assailant. The following occurred during Deputy Rosa's direct examination:

Q. And was [the victim] able to give you a description of the person he believed committed this robbery?

A. Yes. He actually gave a very detailed description.

Q. What did he--what did he describe for you.

[DEFENSE COUNSEL]: Objection. Hearsay.

THE COURT: Overruled.

> DEPUTY ROSA: He described a black male with short
> dreads, just above the shoulder, five-eight, about 145
> pounds, between 27 and 29 years old, with a black jacket
> with a hoodie. It was black and white and when he said
> white, he motioned that it was like towards the inside of the
> jacket, with long blue jeans.

The victim told Deputy Rosa that the following items were taken from him: a Verizon cell phone, a velcro wallet containing two Spoto High School IDs, a Visa debit card, and $6 in cash. Deputy Keron Lucius arrived, and the victim went with Deputy Lucius to search the neighborhood. Approximately three minutes later, Deputy Lucius informed Deputy Rosa that the victim had identified Livingston as the assailant.

Deputy Rosa responded to where they had found Livingston, and Deputy Rosa noticed that Livingston's height was 5'8", that he weighed approximately 150 pounds, that he wore a black hooded jacket with a white interior, and that he wore long blue jeans. He was a black male around twenty-eight years old. Deputy Rosa did not notice a tattoo on Livingston's face until he saw it in the photograph. He also thought that Livingston's undershirt was white until he noticed in the photograph that it looked gray.

On cross-examination, Deputy Rosa stated that the victim had reported that only three men were involved in the incident and that he never mentioned five or six. Deputy Rosa acknowledged that Livingston's jacket did not have any white on it, only light gray. He admitted that a cross tattoo on a person's face would normally stand out as unusual. He also stated that the victim never described the assailant as having a beard, a mustache, or a scar. None of the victim's items were found on Livingston when he was arrested. And there were approximately twenty to thirty people walking around where Livingston was arrested, but none were wearing the same clothes as Livingston.

-4-

On redirect examination, Deputy Rosa testified that nobody else matched the description given to him by the victim. The State then asked Deputy Rosa if Livingston matched the description "slightly or matched the description to a 'T,' " and Deputy Rosa responded that "it's a spot on of a description as you'll ever get in a career." The defense objected to the answer as being unresponsive and irrelevant, and the trial court overruled the objection. Then the State asked if Deputy Rosa had "ever had a description that detailed," the defense objected, and the trial court sustained the objection.

The second deputy, Deputy Lucius, was asked by the State what type of information he received in the BOLO.[1] The defense objected on the basis of hearsay, but the trial court overruled the objection. The State then asked Deputy Lucius what specific information was relayed to him in the BOLO, and Deputy Lucius responded that he received information of "[a] black male wearing a[] black and white hooded jacket" with "dreadlocks" in his "mid-twenties." Deputy Lucius responded to the the victim's home, and the victim gave him the same description of the assailant. Deputy Lucius drove around with the victim, and within approximately three minutes, the victim identified Livingston as being the assailant. The victim said, "[t]hat's the person, he's 100% sure." Deputy Lucius did not initially notice a tattoo on Livingston's face.

On cross-examination, Deputy Lucius stated that in that neighborhood, it was not unusual to see black males in their twenties with dreads wearing black hoodies and blue jeans. There was high foot traffic that night in Progress Village. When the victim spotted Livingston, the victim offered that he was 100% sure, without being asked

---

[1]"Be on the lookout."

-5-

if he was sure. Deputy Lucius said that the victim initially reported that there were "three guys total."

The State also introduced photographs of the defendant and the victim's injuries taken on the night of the offense.

The jury found Livingston guilty as charged. The defense filed a motion for new trial, arguing that the State was improperly allowed, over objection, to elicit hearsay testimony regarding the victim's description of the man who punched him in the mouth and that the error was compounded by the cumulative nature of the testimony and the State's reference to it during closing arguments. The trial court denied the motion by written order, finding that "[w]hile the victim's description of his assailant is not an 'identification' under Florida Statute 90.801(2)(c)[,] . . . it was admissible as an excited utterance." The trial court later sentenced Livingston to fifteen years in prison as a prison releasee reoffender.

On appeal, Livingston argues that it was error for the trial court to deny his motion for new trial because Deputy Rosa and Deputy Lucius were permitted to testify regarding descriptions of the suspect they had received on the night of the offense. Testimony concerning a victim's or a witness's out-of-court description of an assailant is classic hearsay and is generally not admissible into evidence unless it falls under a hearsay exception. See Puryear v. State, 810 So. 2d 901, 906 (Fla. 2002) (holding that testimony by two witnesses regarding the victim's out-of-court description of the assailant was not admissible as statements of identification under section 90.801(2)(c), Florida Statutes (1999), because a description is not an identification); Swafford v. State, 533 So. 2d 270, 276 (Fla. 1988) (holding that trial court properly excluded as

-6-

hearsay police bulletin that contained victim's description of assailant); English v. State, 43 So. 3d 871, 872-73 (Fla. 5th DCA 2010) (holding that the trial court erred by admitting deputy's description of the suspect that was sent out in BOLO); Hendrieth v. State, 483 So. 2d 768, 769 (Fla. 1st DCA 1986) (holding that trial court erred in allowing police officer to testify regarding the victim's description of the perpetrators because such testimony did not fall within any hearsay exception). Thus, it is clear that both Deputy Rosa's description of the suspect as given to him by the victim and Deputy Lucius's description of the suspect as relayed in the BOLO generally constituted hearsay.

But we cannot say that the trial court erred in admitting the evidence on this basis because in its order denying Livingston's motion for new trial, the trial court agreed that the victim's description of his assailant was not admissible under the "identification" exception to hearsay, citing Puryear, 810 So. 2d 901. The trial court went on to conclude that the victim's description was admissible as an excited utterance. Even though neither party argued the issue of excited utterance to the trial court, the trial court was free to "base [its] evidentiary ruling on an alternate basis that was not suggested by the parties." Williams v. State, 967 So. 2d 735, 750 (Fla. 2007). On appeal, Livingston challenges the admission of the evidence as "identification" testimony under Puryear, but he does not argue that the specific ruling on excited utterance was erroneous. It is axiomatic that the appellant "bears the burden of demonstrating that an error occurred in the trial court." Goodwin v. State, 751 So. 2d 537, 544 (Fla. 1999); see also Stone v. Stone, 873 So. 2d 628, 630 (Fla. 2d DCA 2004) ("The burden of proof on appeal lies with the appellant to demonstrate that the trial court

-7-

erred."); D'Agostino v. State, 334 So. 2d 99, 99 (Fla. 3d DCA 1976) ("An appellant, on an appeal in a criminal case, has the burden of showing that the trial proceedings were so infected with prejudicial error as to compel a reversal of the judgment. Such error must be clearly demonstrated by the appellant."). By failing to challenge the admission of the evidence as an excited utterance, Livingston has failed to satisfy his burden on appeal of demonstrating that the trial court erred in its ruling, and we affirm for this reason.

However, even if Livingston had challenged on appeal the excited utterance ruling, we are not convinced that the trial court reversibly erred in admitting the victim's description of the suspect to Deputy Rosa as an excited utterance. An excited utterance is "[a] statement or excited utterance relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." § 90.803(2), Fla. Stat. (2012).

> [I]n order for an excited utterance to be admissible, the following requirements must be met: (1) there must have been an event startling enough to cause nervous excitement; (2) the statement must have been made before there was time to contrive or misrepresent; and (3) the statement must have been made while the person was under the stress of excitement caused by the startling event.

Stoll v. State, 762 So. 2d 870, 873 (Fla. 2000). "[T]he party seeking to qualify a statement as an excited utterance must lay a proper foundation for its admission." Thomas v. State, 125 So. 3d 928, 930 (Fla. 4th DCA 2013) (citing Mariano v. State, 933 So. 2d 111, 115 (Fla. 4th DCA 2006)). The foundation may be laid by testimony establishing all three requirements. See id.

-8-

Here, by ruling that the evidence constituted an excited utterance, the trial court implicitly found that the State had laid the necessary foundation, and the record supports that implicit finding. The victim testified that it took him two or three minutes to get home after the robbery. He immediately called 911. During cross-examination, the victim admitted that when the incident was going on, he felt like he was having a panic attack and that the EMTs suggested that he go to the hospital. Deputy Rosa testified that when he arrived at the victim's house, the victim was "still shaken up from the incident." Deputy Rosa agreed that the victim "was still under the stressor of being robbed." Accordingly, had the issue been properly raised on appeal, we could not say that the trial court abused its discretion in denying Livingston's motion for new trial and in ruling that the victim's description to Deputy Rosa constituted an excited utterance.[2] See Stephens v. State, 787 So. 2d 747, 754 (Fla. 2001) ("A trial court's denial of a motion for new trial is reviewed under an abuse of discretion standard."); Power v. State, 605 So. 2d 856, 862 (Fla. 1992) (agreeing with the State that two hearsay statements made to a deputy by a witness "were probably admissible under the 'excited utterance' exception to the hearsay rule" because the deputy "testified that when [the witness] flagged him down, '[h]e appeared to be a person that had just witnessed an unusual or serious crime, and very shaken' ") (second alteration in original); see also

---

[2]By observing that the trial court did not err in its excited utterance ruling, we are not invoking the tipsy coachman doctrine. That doctrine allows an appellate court to affirm a lower court decision when the lower court has reached the right result for the wrong reason. State Farm Fire & Cas. Co. v. Levine, 837 So. 2d 363, 365 (Fla. 2002). Rather, we are saying that the trial court reached the right result for the right reason.

Puryear, 810 So. 2d at 904 (clarifying that the Power holding rested on the excited utterance hearsay exception).

The same could not be said for Deputy Lucius's testimony regarding the description he received in the BOLO because that information constituted double hearsay. See Henderson v. State, 135 So. 3d 472, 476 (Fla. 2d DCA 2014) ("[E]ach hearsay statement must fall under an exception for [double hearsay] statements to be admissible." (alterations in original) (quoting Gosciminski v. State, 994 So. 2d 1018, 1026 (Fla. 2008))). But a close examination of the evidence would lead to the conclusion that any error in the admission of Deputy Lucius's limited testimony regarding the BOLO description was harmless. The victim gave a detailed in-court description of the person who robbed him, and the victim identified Livingston in court as that person with 100% certainty. The victim's detailed description of the suspect to Deputy Rosa immediately after the offense, which was properly admitted as an excited utterance, supported the victim's testimony. The evidence also showed that when he was arrested, Livingston matched the victim's description of the suspect and that the victim identified Livingston with 100% certainty that night. Accordingly, even if the correct issue had been presented on appeal and this court were to determine that Deputy Lucius's testimony was improperly admitted, it would follow that there was no reasonable possibility that Deputy Lucius's limited BOLO testimony contributed to the verdict. See Ventura v. State, 29 So. 3d 1086, 1090-91 (Fla. 2010) (reiterating the harmless error test set forth in State v. DiGuilio, 491 So. 2d 1129 (Fla. 1986)).

Affirmed.

BLACK, J., Concurs.
WALLACE, J., Concurs with opinion.

-10-

WALLACE, Judge, concurring.

I concur in the affirmance of Livingston's judgment and sentence for robbery. However, I reach this result by a different path from the one taken by my colleagues in the majority. I agree with the majority that the issues raised by Livingston that the majority does not discuss are without merit. But I disagree with the majority's analysis about the propriety of using the excited utterance exception to the hearsay rule as a basis for affirming Livingston's conviction. I also disagree with the majority's analysis of the question of harmless error.[3]

As the majority notes, the trial court conceded in its order denying the motion for new trial that the evidence regarding the victim's identification of his assailant was not properly admissible in evidence. Nevertheless, the trial court went on to deny the motion for new trial on a new theory that the challenged evidence could have been properly admitted at trial under the excited utterance exception to the hearsay rule. For the reasons I will explain below, I think that this latter ruling was erroneous.

At trial, the State did not assert the excited utterance exception as a basis for the admission of the challenged testimony. Thus, the trial court did not conduct a hearing or make the required predicate findings before admitting the evidence. See § 90.105(1), Fla. Stat. (2013); Morrison v. State, 161 So. 3d 564, 565 (Fla. 2d DCA 2014);

---

[3]On a separate point not addressed by the majority, I observe that Livingston's appellate counsel has framed her argument on the admissibility of the evidence concerning the victim's description of his assailant and another issue as a challenge to the trial court's order denying Livingston's motion for new trial. Although the matter seems to be well settled, it may be worth noting that a defendant in a criminal case may not appeal from an order denying a motion for new trial. The appeal is from the judgment and sentence. See Fla. R. App. P. 9.140(b); Griffith v. State, 171 So. 2d 597, 598 (Fla. 3d DCA 1965); see also State v. Smith, 201 So. 2d 828, 830 (Fla. 2d DCA 1967) (quoting Griffith with approval).

-11-

Tucker v. State, 884 So. 2d 168, 173 (Fla. 2d DCA 2004); Mariano v. State, 933 So. 2d 111, 115-16 (Fla. 4th DCA 2006). Indeed, the testimony was not admitted as an excited utterance. The first mention of this alternative legal theory for the admission of the evidence was in the trial court's order denying the motion for new trial.[4] Thus, Livingston never had an opportunity to address the admissibility of the evidence under the excited utterance exception to the hearsay rule in the context of the trial.

In the order denying Livingston's motion for new trial, the trial court effectively applied a version of the "tipsy coachman" doctrine to its own evidentiary rulings at trial as a basis for denying the motion. My colleagues in the majority approve the trial court's unique application of a right-for-the-wrong-reason analysis in the order denying a new trial as a basis for salvaging the trial court's erroneous evidentiary rulings made during the trial. "[T]he 'tipsy coachman' doctrine . . . permits a reviewing court to affirm a decision from a lower tribunal that reaches the right result for the wrong reasons so long as 'there is any basis which would support the judgment in the record.' " State Farm Fire & Cas. Co. v. Levine, 837 So. 2d 363, 365 (Fla. 2002) (quoting Dade Cty. Sch. Bd. v. Radio Station WQBA, 731 So. 2d 638, 644-45 (Fla. 1999)). But "the key to applying the tipsy coachman doctrine is that the record before the trial court must support the alternative theory or principle of law." Id. (emphasis added) (citing Robertson v. State, 829 So. 2d 901, 906 (Fla. 2002)).

In this case, the trial court's reliance on the excited utterance exception in the order denying the motion for new trial was inappropriate because the State never

---

[4]The State did not file a response to Livingston's motion for new trial. At the hearing on the motion, the State did not raise the excited utterance exception as a basis for denying the motion for new trial.

-12-

asserted that exception to the hearsay rule at trial as a basis for the admission of the challenged evidence. Thus, the trial court failed to conduct the necessary hearing or to make the required predicate findings before admitting the evidence. The majority asserts that "[h]ere, by ruling that the evidence constituted an excited utterance, the trial court implicitly found that the State had laid the necessary foundation, and the record supports that implicit finding." They then proceed to summarize the evidence on this point, supplying the missing findings from their own reading of the record.

In my view, the majority's fact-finding exercise on this subject is beyond the proper scope of this court's review of Livingston's judgment and sentence. Section 90.105(1) "imposes the responsibility of determining preliminary questions as to the admissibility of evidence upon the trial judge." Saavedra v. State, 421 So. 2d 725, 727 (Fla. 4th DCA 1982). This court's function is not to make its own findings of fact regarding whether the State has laid a predicate at trial for the admission of certain evidence. Nor may we reweigh the evidence. Instead, we are to review the record for the purpose of determining whether the findings of fact made by the trial court are supported by competent evidence. See Shaw v. Shaw, 334 So. 2d 13, 16 (Fla. 1976); Fla. Detroit Diesel v. Nathai, 28 So. 3d 182, 185 (Fla. 1st DCA 2010) (quoting Shaw, 334 So. 2d at 16). Here, the trial court was never called upon at trial to make the critical findings of fact concerning whether the challenged evidence was admissible as an excited utterance, and there is nothing for this court to review. This court cannot cure the trial court's omission to make the required predicate findings—as the majority has done—by culling the record and supplying the missing findings.

-13-

The trial court's posttrial application of a right-for-the-wrong-reason analysis to its own ruling made during the course of the trial is inappropriate in this case because the State never asserted the excited utterance exception to the hearsay rule at trial as a basis for the admission of the challenged testimony. The State's failure to make this argument at trial had two results critical to a correct analysis. First, the trial court failed to conduct the required hearing or to make the predicate findings before admitting the evidence. Second, Livingston never had an opportunity to be heard on the question of whether the evidence in question was properly admissible as an excited utterance. Thus, there is no basis in the record for approving the admission of the evidence as an excited utterance. It follows that a right-for-the-wrong-reason analysis cannot be made, and the admission of the evidence constituted error. Cf. Robertson, 829 So. 2d 906-11 (an appellate court's consideration of the propriety of using the "tipsy coachman" doctrine to affirm a trial court ruling); May v. HCA Health Servs. of Fla., Inc., 166 So. 3d 850, 854 (Fla. 2d DCA 2015) (same); Fitzsimmons v. State, 935 So. 2d 125, 128 (Fla. 2d DCA 2006) (same); State v. Lena, 819 So. 2d 919, 921 (Fla. 3d DCA 2002) (same). For these reasons, I conclude that the excited utterance exception to the hearsay rule does not constitute a valid basis for the denial of Livingston's motion for new trial or for the affirmance of the judgment and sentence.

In support of the trial court's reliance on the excited utterance exception in the order denying Livingston's motion for new trial, the majority quotes from Williams v. State, 967 So. 2d 735, 750 (Fla. 2007), for the proposition that "the trial court was free to 'base [its] evidentiary ruling on an alternate basis that was not suggested by the parties.' " This proposition from Williams is not contrary to the analysis that I make

-14-

here. The supreme court made the quoted statement about an evidentiary ruling that the trial court in that case made <u>during the course of a trial</u>, not—as in this case—in a posttrial ruling. The difference in the timing of the evidentiary ruling is critical. With regard to an evidentiary ruling made during the course of a trial, the parties have an opportunity to present evidence on the preliminary questions pertinent to the admissibility of the evidence in question. Moreover, the parties have an opportunity to be heard and make appropriate submissions on the admissibility of evidence on any alternate basis proposed by the trial court <u>before</u> the evidence is received. Neither of these opportunities are available where, as in this case, a trial court makes a posttrial evidentiary ruling on its own initiative on a basis not suggested by either of the parties.

In this case, unlike in <u>Williams</u>, the trial court made its evidentiary ruling on an alternate basis not suggested by either of the parties <u>after</u> the trial when the procedural safeguards in play <u>during</u> the trial were not available to Livingston. It follows that the proposition stated in <u>Williams</u> does not support the trial court's posttrial ruling denying Livingston's motion for new trial.

Nevertheless, Livingston's appellate counsel has not addressed the propriety of the trial court's ruling on the excited utterance issue in the order denying the motion for new trial. Therefore, as the majority correctly observes, the point has been waived. <u>See</u> <u>City of Miami v. Steckloff</u>, 111 So. 2d 446, 447-48 (Fla. 1959); <u>Kenyon v. Kenyon</u>, 496 So. 2d 839, 840 (Fla. 2d DCA 1986); <u>Anheuser-Busch Cos., Inc. v. Staples</u>, 125 So. 3d 309, 312 (Fla. 1st DCA 2013); <u>Polyglycoat Corp. v. Hirsch Distribs., Inc.</u>, 442 So. 2d 958, 960 (Fla. 4th DCA 1983). Indeed, both parties have either overlooked or intentionally ignored the trial court's ruling on the excited utterance

-15-

exception in the order denying the motion for new trial. It is surprising—to say the least—that the State did not argue the trial court's ruling on the excited utterance issue in its answer brief as a basis for affirmance. My colleagues in the majority have developed this ground for affirmance independently.

I turn now to the question of harmless error. The facts of this case were simple—a strong-arm robbery followed by the prompt apprehension and arrest of a suspect. Notably, Livingston was apprehended within a few minutes of the commission of the offense, but he did not have in his possession any of the proceeds of the robbery upon his arrest. Thus the State did not have the benefit of the presumption of Livingston's guilt of the robbery that would otherwise have arisen from his unexplained possession of the victim's recently stolen property. Cf. T.S.R. v. State, 596 So. 2d 766, 767 (Fla. 5th DCA 1992) (stating that the unexplained possession of recently stolen property is sufficient to support a conviction for theft). It follows that Livingston had a viable defense to the robbery charge based on a claim of mistaken identification.

At trial, the State used the challenged identification testimony to bolster its case against Livingston. Indeed, this testimony became a feature of the trial. For example, the prosecutor asked Deputy Rosa, "And would you say [Livingston] matched that description [given by the victim] slightly or matched the description to a 'T' "? Deputy Rosa responded, "It's a spot on of a description as you'll ever get in a career." In closing argument, the prosecutor repeatedly emphasized the close correspondence of the description given by the victim of his assailant to Livingston's physical characteristics and clothing as proof of Livingston's guilt. In light of these factors, I cannot conclude that there is no reasonable possibility that the error in admitting the

-16-

challenged testimony contributed to Livingston's convictions.  See State v. DiGuilio, 491 So. 2d 1129, 1138 (Fla. 1986).

Despite my conclusions about the evidentiary matters and the question of harmless error, the issue of using the excited utterance exception to deny Livingston a new trial has been waived.  Therefore, I must join the majority in voting to affirm Livingston's judgment and sentence.